SECOND DIVISION
Date Filed: February 14, 2006

No. 1-05-0161


| | |
|---|---|
| ILLINOIS FARMERS INSURANCE COMPANY, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellant and | ) Cook County. |
| Cross-Appellee, | ) |
| | ) |
| v. | ) No. 03 CH 06140 |
| | ) |
| ARRID HALL, TRACY HALL, DARIUS HALL | ) |
| and ARRID HALL, JR., a minor, by and | ) |
| through his parent and next friend, | ) |
| Arrid Hall, | ) Honorable |
| | ) Julia M. Nowicki, |
| Defendants-Appellees and | ) Judge Presiding. |
| Cross-Appellants. | ) |

JUSTICE HALL delivered the opinion of the court:

The plaintiff, Illinois Farmers Insurance Company (Farmers), filed an action for declaratory judgment against the defendants, Arrid Hall, Tracy Hall, Darius Hall and Arrid Hall, Jr. Farmers sought a declaration that, under the provisions of its automobile insurance policy providing coverage to Arrid Hall, the defendants' claims for loss of consortium were subject to the $250,000 per-person limit of liability and that section 2-1117 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-1117 (West 2002)), imposing joint and several liability, did not apply to an uninsured motorist arbitration proceeding.

The defendants filed a countercomplaint for declaratory judgment, maintaining that the $500,000 per-occurrence limit applied to each of the tortfeasors because more than one claimant existed. The defendants further maintained that, if the per-occurrence limit applied, they were entitled to receive up to $500,000, regardless of the value of

their individual claims.  Finally, the defendants asserted that joint and several liability applied in the arbitration context.

The circuit court granted summary judgment to the defendants, finding that the defendants' claims were controlled by the higher per-occurrence limit of liability.  The court granted summary judgment to Farmers, finding that section 2-1117 of the Code did not apply to arbitration proceedings.  Farmers appeals, and the defendants cross-appeal from the orders of the circuit court.

On appeal, Farmers raises the following issues: whether the per-occurrence limit of liability in its policy applies to loss of consortium claims and whether the per-occurrence limit of liability in its policy is subject to the policy's per-person limit.  In their cross-appeal, the defendants contend that section 2-1117 of the Code applies to uninsured motorist arbitration proceedings.

Arrid Hall sustained personal injuries when a vehicle, driven by an unidentified driver, struck a vehicle driven by a Mr. Almore, which then struck Mr. Hall and two other pedestrians.  At the time he sustained his injuries, Mr. Hall was married to but estranged from defendant Tracy Hall and had two children, defendants Darius and Arrid Hall, Jr.  Mr. Hall was insured under a policy issued to Clifton Hall, providing uninsured coverage limits of $250,000 per-person and $500,000 per-occurrence.  Farmers paid $250,000 to Mr. Hall, representing the uninsured motorist coverage for the liability of the unidentified vehicle.

The defendants asserted claims for uninsured motorist benefits for the alleged liability of Mr. Almore.  Farmers and the defendants disagreed as to whether the defendants' claims for loss of consortium were subject to the per-person limit of

$250,000 or the per-occurrence limit of $500,000.  Assuming that the per-occurrence limit applied, Farmers maintained that the validity of the defendants' loss of consortium claims would have to be arbitrated.  The defendants maintained that the value of the claims was not subject to arbitration.  Finally, the parties disputed whether the principles of joint and several liability applied to uninsured motorist arbitration proceedings.

Both parties filed motions for summary judgment.  Relying on Roth v. Illinois Farmers Insurance Co., 324 Ill. App. 3d 293, 754 N.E.2d 439 (2001), the circuit court held that the $500,000 per-occurrence limit applied and that the per-occurrence limit was not subject to the per-person limit.  Therefore, both Mr. Hall's bodily injury claim and the loss of consortium claims of the other defendants combined to be covered under the aggregate per- occurrence limit.  The circuit court granted the defendants' motion for summary judgment and denied Farmers' motion for summary judgment on the policy limits issue.  The court further found that joint and several liability under section 2-1117 did not apply to arbitration proceedings.  The court granted Farmers' motion for summary judgment and denied the defendants' motion for summary judgment as to that issue.  This timely appeal and the cross-appeal followed.

ANALYSIS

The pertinent uninsured motorist provisions of the automobile policy issued in this case provide as follows:

"**Coverage C - Uninsured Motorist Coverage**

We will pay all sums which an **insured person** is legally entitled to recover as **damages** from the owner or operator of an **uninsured motor vehicle**

3

because of **bodily injury** sustained by the **insured person**. The **bodily injury** must be caused by an **accident** and arise out of the ownership, maintenance or use of the **uninsured motor vehicle.**

***

**Limits of Coverage**

The amounts shown in the Declarations are the limits of liability for Uninsured Motorist which apply subject to the following:

1. The uninsured motorist **bodily injury** limit for 'each person' is the maximum we will pay for all **damages** resulting from **bodily injury** sustained by one person in any one **accident** or **occurrence.** Included in this limit, but not as a separate claim or claims, are all the consequential **damages** sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow and emotional distress.

2. The uninsured motorist **bodily injury** limit for 'each **occurrence**' is the maximum amount we will pay for two or more persons for **bodily injury** sustained in any one **accident** or **occurrence**.

***

**Arbitration**

If an **insured person** and we do not agree (1) whether the person is legally entitled to recover damages from the owner or operator of an

4

**uninsured motor vehicle,** or (2) as to the amount of payment under this part, either that person or we may demand, in writing, that the issue be determined by arbitration. The arbitrators' decision will be binding unless the amount of the award for damages exceeds the minimum required limits set forth in the Illinois Financial Responsibility Law."

## I. Standard of Review

The court reviews motions for summary judgment <u>de novo</u>. <u>Chubb Insurance Co. v. DeChambre</u>, 349 Ill. App. 3d 56, 59, 808 N.E.2d 37 (2004). Summary judgment is proper if, and only if, the pleadings, depositions, admissions, affidavits and other relevant matters on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. <u>DeChambre</u>, 349 Ill. App. 3d at 59.

By filing cross-motions for summary judgment, the parties invite the court to determine the issues as a matter of law and enter judgment in favor of one of the parties. <u>Wolfram Partnership, Ltd. v. LaSalle National Bank</u>, 328 Ill. App. 3d 207, 765 N.E.2d 1012 (2001). Summary judgment should only be allowed when the right of the moving party is free from doubt. <u>Elliott v. Williams</u>, 347 Ill. App. 3d 109, 112, 807 N.E.2d 506 (2004).

## II. Whether the Policy Per-Occurrence Limit Applies to Loss of Consortium Claims

"An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." <u>Hobbs v. Hartford Insurance Co. of the Midwest</u>, 214 Ill. 2d 11, 17, 823 N.E.2d 561 (2005).

The court's primary objective in construing an insurance policy is to ascertain and give effect to the intentions of the parties as expressed in the policy language. Gillen v. State Farm Mutual Automobile Insurance Co., 215 Ill. 2d 381, 393, 830 N.E.2d 575 (2005).

"If the policy language is unambiguous, the policy will be applied as written, unless it contravenes public policy." Hobbs, 214 Ill. 2d at 17. "Whether an ambiguity exists turns on whether the policy language is subject to more than one reasonable interpretation." Hobbs, 214 Ill. 2d at 17. If the policy language is susceptible to more than one reasonable meaning, it will be considered ambiguous and will be construed against the insurer. Gillen, 215 Ill. 2d at 393. "Although 'creative possibilities' may be suggested, only reasonable interpretations will be considered." Hobbs, 214 Ill. 2d at 17, quoting Bruder v. Country Mutual Insurance Co., 156 Ill. 2d 179, 193, 620 N.E.2d 355 (1993). Thus, the court will not strain to find an ambiguity where none exists. Hobbs, 215 Ill. 2d at 17. "Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous." Hobbs, 214 Ill. 2d at 17.

Farmers contends the circuit court erred when it determined that the $500,000 per-occurrence limit applied to the loss of consortium claims of the defendants. Farmers relies on this court's decision in Martin v. Illinois Farmers Insurance, 318 Ill. App. 3d 751, 742 N.E.2d 848 (2000). The defendants rely on Roth. Roth and Martin construed

No. 1-05-0161

the same policy language but reached different conclusions.[1]

_____

[1]In <u>Roth</u>, the driver at fault was underinsured. However, the policy provided that the terms of the uninsured motorist coverage applied to the underinsured motorist coverage.  <u>Roth</u>, 324 Ill. App. 3d at 294 n.1.  In addition, the limits of the policy in <u>Roth</u> were $100,000 per person/$300,000 per

occurrence.  <u>Roth</u>, 324 Ill. App. 3d at 295.

In Martin, this court rejected the plaintiff's argument that her loss of society claim constituted a separate compensable injury subject to its own per-person limits of Farmers' uninsured motorist coverage. In determining that the policy language was clear and unambiguous, the court stated as follows:

> "The policy clearly states that the per-person limit of liability applies to 'all damages.' 'Included in this limit, but not as a separate claim or claims are all the consequential damages sustained by other persons, such as *** loss of society.' (Emphasis added.) This holding is consistent with previous Illinois cases which hold that loss of consortium is a derivative claim to the direct injury that causes it and, as a result, is generally included and subject to the policy limitations for bodily injury to one person. [Citations.]" Martin, 318 Ill. App. 3d at 763.

In Roth, the administrator of the victim's estate made multiple claims under the underinsured motorist coverage, including a claim for injuries sustained by the victim prior to her death and the claims of her next of kin under the Wrongful Death Act (740 ILCS 180/0.01 et seq. (West 1998)). The administrator sought a declaratory judgment that the $300,000 per-occurrence limit applied to the claims since they were for two or more persons for "'bodily injury'" as defined in the policy or, in the alternative, that the underinsured motorist coverage section was ambiguous. Farmers argued that the $100,000 per-person limit applied because all claims arising out of the decedent's injury and subsequent death should be considered one claim. As in the present case, the parties filed cross-motions for summary judgment.

In contrast to Martin, the Roth court found the policy language ambiguous, stating

9

No. 1-05-0161

as follows:

"When defendant's policy is examined as a whole, it is possible for plaintiff's

claims to fit into either the per-person clause or the per-occurrence clause as

each is applicable to the separate claims asserted.  It is clear that the language

'the maximum amount we will pay for two or more persons for bodily injury

sustained in any one accident or occurrence' (emphasis added; original

emphasis omitted) is applicable to the separate claims asserted by plaintiff.  The

survival claim asserted by Angela Roth's estate for Angela's predeath injuries

and the wrongful-death claim asserted by her parents and siblings for Angela's

resulting death qualify under the terms as two or more persons seeking payment

for bodily injury (injury to the body of Angela Roth and the death of Angela Roth)

sustained in any one accident." Roth, 324 Ill. App. 3d at 297-98.

Subsequently, in Illinois Farmers Insurance Co. v. Marchwiany, 361 Ill. App. 3d 916,

838 N.E.2d 172 (2005), appeal allowed, No. 101598 (January 2006), the court

addressed the same policy language at issue in Martin, Roth and in the present case.[2]

The court observed that the "central dispute over the application of per-person or per-

occurrence [underinsured motorist] limits is framed, essentially, as a question of

_____

[2]Although Marchwiany involved underinsured motorist

coverage, the court relied on uninsured motorist provisions in

Martin, which were "essentially identical to the language in the

Farmers policy in the instant case."  Marchwiany, 361 Ill. App.

3d at 920.

10

whether Roth or [Martin], upon which Farmers relies, controls the result here."

Marchwiany, 361 Ill. App. 3d at 919.          The Marchwiany court rejected the

reasoning in Roth and, relying on Martin, held that the per-person limits applied to the

defendants' claims for consequential damages where only one person received bodily

injuries.  Marchwiany, 361 Ill. App. 3d at 923.  The court noted that the policy language

was identical to that of the policy in Martin and stated as follows:

> "Because the policy language at issue here is identical to that in Martin, it,
> too, like the language in Martin, is clear and unambiguous. [Citation.]  The policy
> issued by plaintiff clearly states, as in Martin, that the per-person limit of liability
> applies to all damages, and the limit includes, '"not as a separate claim or claims
> all the consequential damages sustained by other persons."' (Emphasis in
> original.)  [Citation.]  Following the holding in Martin, the per-person
> [underinsured motorist] coverage limit applies here as well: defendants' claims
> for consequential damages are, therefore, not separate claims but are included
> in the $100,000 per-person limit. [Citation.]"  Marchwiany, 361 Ill. App. 3d at
> 922.

Unlike Roth, the Marchwiany and Martin courts reached their decisions without

considering the per-occurrence provision that, according to Roth, rendered the policy

ambiguous and subject to a construction favoring the insured.  The general rule is that

contracts should be construed as a whole, and the construction given the policy should

be a natural and reasonable one.  Smith v. Allstate Insurance Co., 312 Ill. App. 3d 246,

253, 726 N.E.2d 1 (1999).  However, we do not agree that this compels us to follow

11

No. 1-05-0161

Roth.[3]

_____

[3] We note, as did the

court in <u>Marchwiany</u>, that

<u>Roth</u> did not directly

address the decision in

<u>Martin</u>.  See <u>Marchwiany</u>,

361 Ill. App. 3d at 922.

The term "reasonable" is defined as "[w]ithin the bounds of common sense." American Heritage Dictionary 1031 (1982). Even if we were to agree with Roth that both the per-person and per-occurrence limits could apply to the defendants' claims, such interpretation would not be "within the bounds of common sense," since the policy language in the per-person clause clearly provides that the per-person limit applies to loss of consortium claims. Moreover, a court will not interpret a contract in a manner that would render any provision meaningless. See Michael Nicholas, Inc. v. Royal Insurance Co. of America, 321 Ill. App. 3d 909, 915-16, 748 N.E.2d 784 (2001). Construing all of the terms of the uninsured motorist limits-of-liability provisions, we determine that only one reasonable interpretation of the limits-of-liability provisions exists and reject the Roth court's finding of an ambiguity.

In accordance with the decisions in Marchwiany and Martin, we conclude that the per-person limit applies to the defendants' claims in this case. Consideration of the per-occurrence language is not reasonable in light of the clear language of the per-person limits clause. Thus no ambiguity exists.

The circuit court erred in granting summary judgment to the defendants. Having determined that the per-person coverage limit applies to the defendants' claims, we do not reach the defendants' additional issue based on an application of the per-occurrence limit. See Marchwiany, 361 Ill. App. 3d at 923.

### III. Cross-Appeal

The defendants contend that section 2-1117 of the Code applies to an uninsured motorist arbitration proceeding.

A. <u>Standard of Review</u>

The construction of a statute is a question of law for which the standard of review is <u>de novo</u>. <u>R&B Kapital Development, LLC, v. North Shore Community Bank & Trust Co.</u>, 358 Ill. App. 3d 912, 916, 832 N.E.2d 246 (2005).

B. <u>Discussion</u>

The cardinal rule of statutory construction is to ascertain and give effect to the legislature's true intent. <u>Unzicker v. Kraft Food Ingredients Corp.</u>, 203 Ill. 2d 64, 74, 783 N.E.2d 1024 (2002). When determining the legislative intent, the starting point is the statute's language, which is the most reliable indicator of the legislature's objectives in enacting the particular law. <u>Unzicker</u>, 203 Ill. 2d at 74. When a statute's language is clear and unambiguous, courts may not read in exceptions, limitations, or other conditions. <u>Unzicker</u>. 203 Ill. 2d at 74. "Only when the meaning of the provision cannot be ascertained from its language may a court look beyond the language and resort to aids for construction." <u>Unzicker</u>, 203 Ill. 2d at 74. In <u>Unzicker</u>, the supreme court noted:

> "When construing section 2-1117, it is not difficult to determine 'with any reasonable degree of certainty what the legislature intended.' [Citation.] The legislature intended to provide that minimally culpable defendants should not be responsible for entire judgments and set forth clear rules for how that policy would be implemented." <u>Unzicker</u>, 203 Ill. 2d at 94-95.

At the time of the accident in this case, section 2-1117 of the Code provided as follows:

"Except as provided in Section 2-1118, in actions on account of bodily injury or death or physical damage to property, based on negligence, or product liability based on strict tort liability, all defendants found liable are jointly and severally liable for plaintiff's past and future medical and medically related expenses. Any defendant whose fault, as determined by the trier of fact, is less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendant who could have been sued by the plaintiff, shall be severally liable for all other damages. Any defendant whose fault, as determined by the trier of fact, is 25% or greater of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendants who could have been sued by the plaintiff, shall be jointly and severally liable for all other damages." 735 ILCS 5/2-1117 (West 1994).

The defendants maintain that section 2-1117 is applicable to arbitration proceedings in this case because the policy in this case provides that "all state and local rules governing discovery, procedure and evidence will apply." Because section 2-1117 is part of the Code of Civil Procedure, the defendants reason that it applies to the arbitration proceedings in this case.

By its own language, section 2-1117 is limited to tort actions, whereas the action in this case is a contractual one. Nonetheless, the defendants argue that, by agreeing to pay all sums the insured person is legally entitled to recover as damages from the uninsured motorist, Farmers "steps into the shoes of whatever legal liability the uninsured drivers have incurred. Since the uninsured drivers would legally be held

16

jointly and severally liable, Farmers must also be held jointly and severally liable."

"Section 2-1117 operates as a matter of law to allocate damages according to the verdict of the jury." Unzicker v. Kraft Food Ingredients Corp., 325 Ill. App. 3d 587, 592, 758 N.E.2d 474 (2001), aff'd, 203 Ill. 2d 64, 783 N.E.2d 1024 (2002). Only those whose fault may have played a role are to be considered under section 2-1117, and their fault must be determined by the jury. Unzicker, 325 Ill. App. 3d at 593. The language of section 2-1117 does not contemplate the situation where the insurance company, not the drivers involved in the accident, is a party to the action.

We conclude that the arbitration proceeding in this case is not an action "based on negligence." Therefore, section 2-1117 does not apply to the arbitration proceedings in this case, and the circuit court properly granted summary judgment to Farmers on this issue.

Accordingly, we affirm the granting of summary judgment to Farmers. The circuit court's order granting summary judgment to the defendants is reversed, and the cause is remanded for the entry of an order granting summary judgment to Farmers on the policy limits issue.

Affirmed in part and reversed in part; cause remanded with directions.

GARCIA, P.J., and WOLFSON, J., concur.