# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Owners Insurance Co. v. Seamless Gutter Corp.*, 2011 IL App (1st) 082924-B

| | |
|---|---|
| Appellate Court Caption | OWNERS INSURANCE COMPANY and AUTO-OWNERS INSURANCE COMPANY, Plaintiffs-Appellants, v. SEAMLESS GUTTER CORPORATION, an Illinois Corporation, D.R. HORTON, INC., an Illinois Corporation, Doing Business as Cambridge Homes, ERIC GULBRANDSEN and AMY GULBRANDSEN, Defendants (Westfield Homes of Illinois, Inc., a Dissolved Illinois Corporation, and DRH Cambridge Homes, Inc., an Illinois Corporation, Doing Business as Cambridge Homes, Defendants-Appellees). |
| District & No. | First District, First Division<br>Docket No. 1-08-2924 |
| Rule 23 Order filed | September 6, 2011 |
| Rule 23 Order withdrawn | November 3, 2011 |
| Opinion filed | November 14, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In plaintiff insurers' action seeking a declaratory judgment that they were not obligated to provide coverage for defendant general contractor and its successor under the comprehensive general liability policy and the umbrella policy issued to defendant subcontractor naming the general contractor as an additional insured in an underlying action for the injuries suffered by an employee of the general contractor, the order granting summary judgment for defendants and denying plaintiffs' motion for summary judgment was reversed and summary judgment was entered for plaintiffs, since the construction contract did not require the subcontractor to provide umbrella coverage, the employee exclusion in the comprehensive general liability policy applied to exclude coverage for the injured plaintiff in the underlying action, the estoppel doctrine did not |

apply where plaintiffs did not breach a duty to defend, and plaintiffs did not waive any coverage defenses not set forth in their letters denying coverage.

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CH-01603; the Hon. Martin S. Agran, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Robert Marc Chemers, David S. Osborne, and Sara J. Brundage, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellants. |
| | John D. Hackett, Benjamin B. Belcher, and Julie A. Teuscher, all of Cassidy Schade LLP, of Chicago, for appellees. |
| Panel | PRESIDING JUSTICE HALL delivered the judgment of the court, with opinion. |
| | Justices Lampkin and Rochford concurred in the judgment and opinion. |

**OPINION**

¶ 1      The plaintiffs, Owners Insurance Company (Owners) and Auto-Owners Insurance Company (Auto-Owners), filed a complaint for declaratory judgment against Seamless Gutter Corporation (Seamless), Westfield Homes of Illinois, Inc. (Westfield), DRH Cambridge Homes, Inc. (Cambridge), D.R. Horton, Inc., and Eric and Amy Gulbrandsen, seeking a declaration that defendants Westfield and Cambridge were not entitled to coverage under the policies of insurance issued to Seamless by the plaintiffs. The circuit court denied the plaintiffs' motion for summary judgment and entered summary judgment in favor of the defendants.[1] The plaintiffs appealed.

¶ 2      On November 15, 2010, this court entered an order pursuant to Illinois Supreme Court Rule 23 (eff. Jan. 13, 2011) affirming in part and reversing in part the grant of summary judgment to the defendants finding that there were genuine issues of material fact. *Owners Insurance Co. v. Seamless Gutter Corp.,* No. 1-08-2924 (2010) (unpublished order under Supreme Court Rule 23). The plaintiffs filed a petition for leave to appeal.

---

[1]Seamless, D.H. Horton, Inc., and the Gulbrandsens are not parties to this appeal.

¶ 3　　On March 30, 2011, our supreme court denied leave to appeal but issued a supervisory order directing this court to vacate our order and reconsider our determination that Owners owed a duty to Cambridge, in light of *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446 (2010). *Owners Insurance Co. v. Seamless Gutter Corp.,* No. 111754 (Ill. Mar. 30, 2011) (table). In accordance with the supervisory order, we vacate our judgment in *Owners Insurance Co.*, and upon reconsideration, we now determine that the insurers did not have a duty to defend Cambridge.

¶ 4　　As our prior judgment was vacated, we revisited the issue of whether the plaintiffs had a duty to defend Westfield. See *Flavell v. Ripley*, 247 Ill. App. 3d 842, 847 (1993) ("[w]here a judgment order is vacated, the effect is to leave the pleadings as if no judgment were ever entered"); but see *People v. Coulter*, 345 Ill. App. 3d 81 (2003) (where supreme court vacated appellate court's prior opinion and remanded for reconsideration in light of a recent decision of the court, the appellate court would not consider portions of that decision not related to the case before the appellate court).

¶ 5　　We now determine that Westfield was not an insured under either of the plaintiffs' policies, and therefore, they had no duty to defend Westfield. The pertinent facts are taken from the pleadings and are set forth below.

¶ 6　　　　　　　　　　　　　　　　I. BACKGROUND

¶ 7　　　　　　　　　　　　　　A. The Construction Contract

¶ 8　　Westfield was the general contractor and Seamless was a subcontractor on a construction project site in Algonquin, Illinois (the Algonquin site). The contract between Seamless and Westfield contained the following provisions relating to insurance:

> "Subcontractor shall *** pay for and maintain insurance for all coverages and amounts of coverage not less than those set forth below *** and shall provide directly from Subcontractor's insurance carrier to Contractor at Contractor's office certificates issued by insurance companies satisfactory to Contractor to evidence such coverage ***. *** In the event of any failure by Subcontractor to comply with the provisions of this Paragraph 27.1. Contractor may *** purchase such insurance at Subcontractor's expense, provided that Contractor shall have no obligation to do so and if Contractor shall do so, Subcontractor shall not be relieved of or excused from the obligation to obtain and maintain such insurance amounts and coverages. Subcontractor shall provide to Contractor a certified copy of any and all applicable insurance policies and/or endorsements within fifteen (15) days of any request of Contractor.
>
> The non-procurement of such insurance by the Subcontractor, or the non-delivery of such certificates or policies to Contractor, whether inadvertently or otherwise, shall not constitute waiver of subcontractor's obligations hereunder.
>
> 　　　　　　　　　　　　　　　* * *
>
> 27.2 SCHEDULE OF INSURANCE COVERAGES
>
> 　　　　　　　　　　　　　　　* * *
>
> 27.2.3 Commercial Liability Insurance $2,000,000 general aggregate, and $2,000,000

completed operations aggregate, and $2,000,000 each occurrence for bodily injuries, death and property damage resulting from any one occurrence, including the following coverages and conditions:

1. Shall name Contractor, Owner and Lender, if any, and any other parties designated by the Contractor as Additional Insureds as their interests may appear pursuant to ISO Additional Insured Endorsement CG 2010 (or the most recent form of said endorsement, if applicable), including but not limited to the following entities:

Westfield Homes of Illinois, Inc. (Sample Certificate Attached)

Westfield Development Corporation of Illinois

Westfield Homes USA

A copy of such Additional Insured endorsement shall be attached to the Certificate of Insurance, and the endorsement number or designation shall be entered on the Certificate."

¶ 9 On September 4, 2001, a certificate of insurance was issued by Seamless's insurance agent, listing Seamless as the insured and Westfield as the certificate holder. There was no reference to Westfield as an additional insured on the certificate. The certificate provided as follows:

"THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW."

¶ 10 In 2001, Westfield was dissolved, and Cambridge acquired Westfield's assets, including the Algonquin site. Cambridge was added as an additional insured pursuant to an endorsement to the Owners policy.

¶ 11 B. The Insurance Policies

¶ 12 1. *Owners Policy*

¶ 13 Owners issued a commercial general liability (CGL) policy of insurance to Seamless as the named insured for the effective policy period of July 1, 2001, to July 1, 2002. The CGL policy provided in pertinent part as follows:

"1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages."

The Owners policy contained the following exclusion to the above coverage:

"This insurance does not apply to:

\* \* \*

e. 'Bodily injury' to:

(1) An employee of the insured arising out of and in the course of employment

-4-

by the insured; or

(2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an 'insured contract.' "

¶ 14                              2. *Auto-Owners Policy*

¶ 15     Auto-Owners issued a commercial umbrella insurance policy to Seamless. In addition to Seamless, the named insured, the following were also insureds under the policy:

"Any person, organization, trustee or estate with respect to which you are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to operations by or on behalf of, or to facilities of or used by you."

The Auto-Owners policy contained the following exclusion:

"This policy does not apply to:

C. 1. Bodily Injury or personal injury of an employee of the insured arising out of and in the course of employment by the insured; or

2. A loss or claim by the spouse, child, parent, brother or sister of the employee of the insured as a consequence of C.1.

This exclusion applies:

1. whether the insured may be liable as an employer or in any other capacity; and

2. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to:

1. liability assumed by the insured under an insured contract; or

2. bodily injury with respect to which insurance is provided such insured by scheduled underlying insurance."

¶ 16                          C. The Underlying Complaints

¶ 17     On November 5, 2004, Eric and Amy Gulbrandsen filed a personal injury suit against Westfield and Seamless. The complaint alleged that, on January 21, 2002, Mr. Gulbrandsen was injured when he fell at the Algonquin site. The complaint contained no allegation that Mr. Gulbrandsen was an employee of either Seamless or Westfield. However, in an affirmative defense, Seamless alleged that Mr. Gulbrandsen was the job superintendent/foreman for Westfield and was in the course of his employment on January

21, 2002.

¶ 18 Seamless filed a third-party complaint against Cambridge, seeking contribution in the event it was found liable to the Gulbrandsens. Seamless alleged that Cambridge had purchased the assets and liabilities of Westfield, including the Algonquin site, and was in charge of the site at the time of Mr. Gulbrandsen's fall.

¶ 19 Westfield and Cambridge tendered their defenses to Owners, which Owners declined. On January 24, 2007, the Gulbrandsen suit was settled.

## D. Summary Judgment

¶ 20 

¶ 21 On January 17, 2007, the plaintiffs filed their declaratory judgment complaint. In their amended complaint, the insurers sought a declaration that Westfield's rights, if any, were determined by the terms and conditions of the Owners policy, not the certificate of insurance. The plaintiffs also sought a declaration that they had no duty to defend Cambridge under the policy exclusion for bodily injuries suffered by an employee.

¶ 22 The plaintiffs filed a motion for summary judgment, alleging that the certificate of insurance did not establish that Westfield was an additional insured on the Owners policy. They further alleged that the Owners policy exclusions operated to deny coverage to Cambridge.

¶ 23 In response to the motion for summary judgment, the defendants maintained that the plaintiffs were estopped from denying coverage because their declaratory judgment complaint was not filed timely. The defendants further maintained that the plaintiffs had waived the right to contest Westfield's status as an additional insured because, prior to the filing of the complaint, Owners had never asserted that Westfield was not an additional insured, pointing out that Owners had denied coverage to Westfield based on an exclusion, applicable to additional insureds. In the alternative, the defendants maintained that there were questions of fact as to whether the certificate of insurance conveyed additional-insured status on Westfield.

¶ 24 The defendants also maintained that Westfield was an insured under Auto-Owners' umbrella policy under the "written contract" provision. Because the umbrella policy required Auto-Owners to provide an insured with a defense in the event there was no primary coverage for an incident covered under the policy, the defendants argued that Auto-Owners was required to defend Westfield in the Gulbrandsen suit.

¶ 25 In response, the plaintiffs disputed the untimeliness of their complaint and maintained that they were not required to raise all of their policy defenses in their denial of coverage letters to the defendants. They denied that a question of fact existed as to whether the certificate of insurance conveyed additional-insured status on Westfield. The plaintiffs pointed out that the contract between Seamless and Westfield required Seamless to provide primary, noncontributory insurance coverage, not umbrella coverage.

¶ 26 On September 23, 2008, the circuit court entered the following order:

"(1) Plaintiff's [*sic*] motion for Summary Judgment is denied; (2) the Court finds, on its own ruling, that Plaintiffs Owners and Auto-Owners have a duty to defend and

indemnify Defendants Westfield and Cambridge; and that Plaintiff insurers are estopped from raising coverage defenses; (3) that this is a final judgment for purposes of Supreme Court Rule 304(a) and the case is hereby terminated."

This appeal followed.

## II. ANALYSIS

### A. Standard of Review

The *de novo* standard of review applies to our review of a circuit court's grant of summary judgment. *Luise, Inc. v. Village of Skokie*, 335 Ill. App. 3d 672, 678 (2002). The construction of the provisions of an insurance policy presents a question of law to which the *de novo* standard of review is also applicable. See *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005).

The principles guiding our review of the grant of summary judgment are well settled. "Summary judgment is proper if, and only if, the pleadings, depositions, admissions, affidavits and other relevant matters on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Illinois Farmers Insurance Co. v. Hall*, 363 Ill. App. 3d 989, 993 (2006). The court will uphold the grant of summary judgment only when the right of the moving party is free from doubt. *Hall*, 363 Ill. App. 3d at 993.

### B. Discussion

#### 1. *Duty to Defend Westfield*

Two requirements must be satisfied before the duty to defend arises: (1) the action must be brought against an insured, and (2) the allegations of the complaint must disclose the potential for policy coverage. *Federal Insurance Co. v. Economy Fire & Casualty Co.*, 189 Ill. App. 3d 732, 735 (1989). Where the allegations of the complaint reveal that the action was not brought against an insured and there was no potential coverage under the policy, there is no duty to defend the underlying action. *Federal Insurance* Co., 189 Ill. App. 3d at 735. Thus, the threshold inquiry is whether Westfield was an insured under the plaintiffs' policies.

Our court has recognized two lines of cases addressing the issue of coverage where there is a certificate of insurance separate from the policy itself. Where the certificate did not refer to the policy and the terms of the certificate conflicted with the terms of the policy, the certificate language governed the extent and terms of the coverage. Where the certificate referred to the policy and expressly disclaimed any coverage other than that contained in the policy itself, the policy governed the extent and terms of the coverage. *United Stationers Supply Co. v. Zurich American Insurance Co.*, 386 Ill. App. 3d 88, 102 (2008) (cases cited therein).

In *United Stationers Supply Co.*, the plaintiff was issued a certificate of insurance containing a disclaimer that the coverage was governed by the policy itself. The construction contract required that the plaintiff be named as an additional insured on different types of

insurance, but not on CGL insurance. The indemnification provision of the contract did not require the purchase of insurance for the plaintiff. *United Stationers Supply Co.*, 386 Ill. App. 3d at 104. The court analyzed the decisions in *West American Insurance Co. v. J.R. Construction Co.*, 334 Ill. App. 3d 75 (2002), *American Country Insurance Co. v. Kraemer Brothers, Inc.*, 298 Ill. App. 3d 805 (1998), and *Pekin Insurance Co. v American Country Insurance Co.*, 213 Ill. App. 3d 543 (1991).

¶ 36    In *Pekin Insurance Co.*, the contractor was denied additional-insured status where the certificate contained the disclaimer, requiring the contractor to look to the terms of the policy to determine coverage. As there was no coverage under the policy, there was no duty to defend. *Pekin Insurance Co.*, 213 Ill. App. 3d at 547-48. In *Kraemer Brothers, Inc.*, the certificate of insurance contained a disclaimer and, therefore, the contractor was bound by the exclusions and conditions in the policy. *Kraemer Brothers, Inc.*, 298 Ill. App. 3d at 811.

¶ 37    In *J.R. Construction Co.*, even though the certificate of insurance contained the disclaimer, the reviewing court found that, when considered together, the policy and the certificate provided coverage to the contractor. The certificate listed the contractor as an additional insured; the subcontractor never denied that there was an oral agreement to add J.R. Construction as an additional insured; and a number of documents prepared by the insurer confirmed that J.R. Construction was an additional insured under the policy. *J.R. Construction Co.*, 334 Ill. App. 3d at 84-85.

¶ 38    The court in *United Stationers Supply Co.* chose to follow the line of cases holding that, where the certificate refers to the policy and expressly disclaims any coverage other than that contained in the policy, the policy governs the extent and the terms of the coverage. Finding *J.R. Construction Co.* distinguishable, the court concluded as a matter of law that United Stationers was not an additional insured under the CGL policy based on the following:

> "(1) United Stationers is not specifically listed as an additional insured in the policy; (2) the construction contract requiring D.C. Taylor to purchase insurance on behalf of United Stationers did not specifically require the purchase of a commercial general liability policy; (3) there is no evidence of intent by the parties that United Stationers was to be added as an additional insured; and (4) the disclaimer language in the certificate of insurance put United Stationers on notice that the CGL policy language governed coverage of additional insureds." *United Stationers Supply Co.*, 386 Ill. App. 3d at 105.

¶ 39    We have reconsidered the determination in our prior order that a genuine material question of fact existed as to Westfield's status as an additional insured under the Owners policy and conclude that our reliance on *J.R. Construction Co.* was misplaced. Like *J.R. Construction Co.,* there was an agreement to name the contractor as an additional insured. In both cases, the certificate contained the disclaimer, but, whereas in *J.R. Construction Co.*, the contractor was listed as an additional insured, in this case, Westfield was not listed as an additional insured in the certificate. A prior certificate issued to Westfield for a prior policy period did list it as an additional insured. The fact that the certificate at issue in this case did not refer to Westfield as an additional insured should have alerted Westfield that there was some question as to its additional-insured status, requiring it to review the policy and bring the discrepancy to Seamless' or Owners' attention. There was no evidence that Westfield

ever requested to view the CGL policy to verify its status as an additional insured. In light of all the evidence, the fact that Owners did not question Westfield's status as an insured in refusing the tender of its defense of the Gulbrandsen suit did not raise a genuine issue of material fact so as to bar summary judgment.

¶ 40     We conclude that, as a matter of law, Westfield was not an additional insured under the Owners policy. Therefore, Owners had no duty to defend Westfield.

¶ 41     The defendants maintain that Westfield was an insured under the written contract provision of Auto-Owners policy and therefore Auto-Owners had a duty to defend Westfield. We disagree. According to the written contract provision, Westfield would be an insured under the Auto-Owners policy if the construction contract required umbrella coverage. The construction contract did not require Seamless to provide umbrella coverage. As Westfield was not an insured under the written contract provision of the policy, Auto-Owners did not have a duty to defend Westfield.

¶ 42                                 *2. Duty to Defend Cambridge*

¶ 43     The plaintiffs contend that there was no duty to defend Cambridge in the third-party suit brought against it by Seamless because the policies excluded coverage for bodily injury suffered by an insured's employee. As Mr. Gulbrandsen was Cambridge's employee, the plaintiffs maintain that there was no coverage for Cambridge under the policies.

¶ 44     To determine whether an insurer has a duty to defend its insured from a lawsuit, a court compares the facts alleged in the underlying complaint to the relevant portions of the insurance policy. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363 (2006). The insurer is obligated to defend the insured if the complaint alleges facts within or potentially within the policy's coverage. *Valley Forge Insurance Co.*, 223 Ill. 2d at 363. The insurer must defend the insured even if the allegations are false or groundless and even if only one theory of recovery is covered under the policy. *Valley Forge Insurance Co.*, 223 Ill. 2d at 363. Therefore, we must determine whether the allegations of Seamless's third-party complaint disclose the potential of policy coverage. *Federal Insurance Co.*, 189 Ill. App. 3d at 735.

¶ 45     In order for the employee exclusion under the Owners policy to apply, Mr. Gulbrandsen must have been both an employee of Cambridge and in the course of his employment with Cambridge at the time of his accident. In its third-party complaint for contribution against Cambridge, Seamless alleged that in October 2001, Westfield and its assets, including the Algonquin site, had been purchased by Cambridge. At the time of Mr. Gulbrandsen's accident, Cambridge was the owner and the general contractor for the Algonquin construction site and was Mr. Gulbrandsen's employer. The third-party complaint repeated the allegations from the Gulbrandsen complaint that Mr. Gulbrandsen was leaving a dwelling on the Algonquin construction site when he slipped and fell on an unnatural accumulation of ice. It further alleged that Cambridge breached its duty to maintain and supervise its property and to exercise due care and caution for the safety of Mr. Gulbrandsen, setting forth various acts alleged to constitute negligence on the part of Cambridge toward Mr. Gulbrandsen.

¶ 46    In our prior order, we determined that, in the absence of an allegation that Mr. Gulbrandsen was in the course of his employment at the time of his accident, there was a potential for coverage for Cambridge under the Owners policy. Therefore, Owners owed a duty to defend Cambridge in the Seamless third-party suit. *Owners Insurance Co.*, slip order at 18. It is this finding that the supreme court ordered us to reconsider in light of *Wilson*.

¶ 47    In *Wilson*, the court pointed out that the rule that courts look solely to the allegations of the complaint in determining whether there is a duty to defend is a "general rule." *Wilson*, 237 Ill. 2d at 458. The court noted that in *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017 (2008), the appellate court considered the allegations of the complaint, the third-party complaint and the relevant language of the insurance policy in determining that the insurer owed a duty to defend. *Wilson*, 237 Ill. 2d at 460. The supreme court quoted the following language from *Holabird & Root*:

> " '[C]onsideration of a third-party complaint in determining a duty to defend is in line with the general rule that a trial court may consider evidence beyond the underlying complaint if in doing so the trial court does not determine an issue critical to the underlying action [citation]. *** *The trial court should be able to consider all the relevant facts contained in the pleadings, including a third-party complaint, to determine whether there is a duty to defend.* After all, the trial court need not wear judicial blinders and may look beyond the complaint at other evidence appropriate to a motion for summary judgment. [Citations.]' (Emphasis added.)" (Internal quotation marks omitted.) *Wilson*, 237 Ill. 2d at 460-61 (quoting *Holabird & Root*, 382 Ill. App. 3d at 1024, 1031-32).

See *Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301 (1983); in accord *Pekin Insurance Co. v. Pulte Home Corp.*, 404 Ill. App. 3d 336 (2010). In a summary judgment proceeding, when determining whether a duty to defend exists, the court is not limited to considering the allegations of the complaint but may consider evidence usually considered in ruling on a motion for summary judgment, so long as such evidence does not tend to determine an issue critical to the determination of the underlying law suit. See *Wilson*, 237 Ill. 2d at 462 (relying on the considerations set forth in *Holabird & Root* and *Envirodyne Engineers, Inc.*).

¶ 48    In our prior order, we noted that "[w]hile the Seamless third-party complaint alleged that Mr. Gulbrandsen was Cambridge's employee at the time he fell, there was no allegation that Mr. Gulbrandsen was in the course of his employment at that time." *Owners Insurance Co.*, slip order at 18. Cambridge's complaint against Seamless did allege that Mr. Gulbrandsen was injured while he was employed by Cambridge and performing work at the Algonquin site. We declined to consider those allegations because that complaint was not a part of the record on appeal. *Owners Insurance Co.*, slip order at 18 (citing *Carroll v. Faust,* 311 Ill. App. 3d 679, 725 N.E.2d 764 (2000)). In reaching our determination that there was potential for coverage for Cambridge under the Owners policy, we noted, but did not consider, that "[i]n its answer and affirmative defenses, Seamless alleged that Mr. Gulbrandsen was in the course of his employment with Cambridge." *Owners Insurance Co.*, slip order at 18 n. 5.

¶ 49    In ruling on a summary judgment motion, the court considers "the pleadings, depositions,

admissions, affidavits and other relevant matters on file." *Hall*, 363 Ill. App. 3d at 993; 735 ILCS 5/2-1005(c) (West 2006). In its first affirmative defense to the Gulbrandsens' complaint, Seamless alleged that "[o]n January 21, 2002, the plaintiff, Eric Gulbrandsen was in the course of his employment with the Co-defendant, Westfield Homes, and was supervising the construction of the multi-family being erected in Algonquin, Illinois." Seamless's amended answer and affirmative defenses to the Gulbrandsen's complaint were included in an exhibit to the plaintiffs' amended complaint for declaratory judgment, and therefore, properly considered by a court in ruling on summary judgment. The evidence that Mr. Gulbrandsen was in the course of his employment when the accident occurred did not determine the outcome of the underlying case. See *Holabird & Root*, 382 Ill. App. 3d at 1032 (allegation that subcontractor installed the lights did not determine an issue critical to the underlying lawsuit or the ultimate finding of negligence).

¶ 50 As we previously observed, our review of the grant of summary judgment is *de novo*. We consider the entire record in determining whether summary judgment was properly granted. *Makowski v. City of Naperville*, 249 Ill. App. 3d 110, 115 (1993). We are aware that any doubt as to the duty to defend must be resolved in favor of the insured. *Pulte Home Corp.*, 404 Ill. App. 3d at 340. Considering all of the evidence in the record pertinent to ruling on a motion for summary judgment, we find no evidence raising a genuine question of fact as to whether Mr. Gulbrandsen was in the course of his employment with Cambridge at the time of his accident. As the employee exclusion in the Owners policy applied, there was no potential for coverage for Cambridge under the Owners policy. Therefore, the plaintiffs had no duty to defend Cambridge in the Seamless third-party suit.

¶ 51                                                3. *Estoppel*

¶ 52 The defendants maintain that the declaratory judgment suit was not timely filed. Therefore, the plaintiffs were estopped from raising any policy defenses.

¶ 53 In order to avoid the application of the estoppel doctrine, an insurer that takes the position that the policy does not provide coverage may not simply refuse to defend the insured but must either (1) defend the suit under a reservation of rights, or (2) seek a declaratory judgment that there is no coverage. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150 (1999). However, the "estoppel doctrine applies only where [the] insurer has breached its duty to defend." *Employers Insurance of Wausau*, 186 Ill. 2d at 151.

¶ 54 In view of our determination that the plaintiffs had no duty to defend, the estoppel doctrine does not apply to bar the policy defenses.

¶ 55                                                4. *Waiver*

¶ 56 Finally, the defendants maintain that the plaintiffs waived their right to raise any policy defenses that were not raised in their denial of coverage.

¶ 57 This court disagreed with the suggestion in *Coulter v. American Employers' Insurance Co.,* 333 Ill. App. 631 (1948), that in any case an insurer refused coverage on one ground,

it waived the right, or was estopped, to deny coverage on another ground. *Jones v. Universal Casualty Co.*, 257 Ill. App. 3d 842, 852 (1994). Instead, we found the better rule to be "that insureds must show that they relied to their detriment upon the insurer's failure to assert a particular defense." *Jones*, 257 Ill. App. 3d at 852. For example, an insurer should not be allowed to assert a blanket denial of coverage and then assert the insured's failure to provide proof of loss, since the law does not require the insured to perform what appeared to be a useless act. *Jones*, 257 Ill. App. 3d at 852.

¶ 58 The evidence does not establish that the defendants were prejudiced by the failure to raise the policy defenses not raised in their denial of coverage letters. The defendants suggest that, because they were unaware that Westfield's status as an additional insured would be challenged, they had no opportunity to obtain evidence to establish that Westfield was an additional insured. However, the defendants do not indicate what evidence beside the Owners policy, the certificate of insurance and the construction contract, all of which they had access to, they could have presented. Moreover, the defendants were not prevented from producing evidence in this proceeding to establish that Westfield was an additional insured.

¶ 59 We conclude that the plaintiffs did not waive any coverage defenses not set forth in their denial of coverage letters.

¶ 60                                     III. CONCLUSION

¶ 61 For all of the foregoing reasons, we reverse the order granting summary judgment to the defendants and denying the plaintiffs' motion for summary judgment. Pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we enter summary judgment for the plaintiffs on their complaint for declaratory judgment. Deciding this case as we do, we need not address whether the circuit court erred in granting summary judgment to the defendants in the absence of their request for such relief.

¶ 62 Reversed.