In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3566

PROLINK HOLDINGS CORPORATION,

*Plaintiff-Appellant,*

*v.*

FEDERAL INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 11 C 300—**Ronald A. Guzmán**, *Judge.*

ARGUED APRIL 17, 2012—DECIDED AUGUST 3, 2012

Before BAUER, KANNE, and SYKES, *Circuit Judges*.

KANNE, *Circuit Judge*. In 2008, GPS Industries, Inc., and GPS IT, LLC (collectively "GPS"), filed a lawsuit against ProLink Holdings Corporation asserting claims of patent infringement, slander of title, and unfair competition. ProLink's insurer, Federal Insurance Company, refused to defend ProLink in the lawsuit because the complaint's allegations did not fall within the governing policy, or in the alternative, were subject to various

exclusions within the policy. GPS and ProLink eventually settled and ProLink now seeks a declaration that Federal had a duty to defend the GPS lawsuit. The district court granted Federal's motion for judgment on the pleadings. Because GPS's allegations are not covered under the policy, Federal did not have a duty to defend ProLink and we affirm the judgment of the district court.

## I. BACKGROUND

ProLink and GPS are business competitors, each manufacturing and selling GPS-based golf course distance measurement and course management products. Relevant to this litigation, GPS owns U.S. Patent No. 5,438,518 ("the '518 patent") for a player positioning and distance finding system. On July 16, 2008, GPS sued ProLink, alleging that ProLink infringed and induced the infringement of the '518 patent by "making, using, leasing, offering to sell, and/or selling devices incorporating the inventions patented in the '518 patent." (GPS Compl. at 5.) In addition, GPS asserted claims of slander of title and unfair competition against ProLink. Specifically, GPS alleged that on June 30, 2006, ProLink falsely represented that it owned an exclusive license in perpetuity under the '518 patent as part of an intellectual property security agreement with Comerica Bank. This agreement was recorded and allegedly encumbered GPS's title to the '518 patent. On August 17, 2007, ProLink entered into a second intellectual property security agreement, this time representing that it owned outright the '518 patent. Again, this agreement was recorded and

allegedly encumbered GPS's title. The GPS complaint alleges that ProLink knew that its representations were false and that it does not own the '518 patent or any associated rights. Further, "the ProLink Defendants have continued to make false claims of license rights and/or ownership interests in the '518 patent to investors and to others within the golf industry, and have granted security interests in the '518 patent to others." (GPS Compl. at 8.) According to GPS, ProLink's actions slandered GPS's title to the '518 patent and constituted unfair competition.

Since 2003, ProLink was a named insured under Federal's commercial general liability insurance policy (the "Policy"). In late 2008, ProLink notified Federal of the GPS lawsuit, provided a copy of the complaint, and requested that Federal defend it in the ensuing litigation. By letter dated December 15, 2008, Federal informed ProLink that it would not defend or indemnify ProLink because GPS's allegations did not satisfy the Policy's definition of "personal injury" and, even if they did, the Policy's Intellectual Property Laws or Rights Exclusion or Expected or Intended Injury Exclusion would apply. ProLink eventually settled GPS's claims.

On January 14, 2011, ProLink filed a declaratory judgment action in district court, seeking to establish that Federal breached its duty to defend ProLink in the GPS litigation. ProLink cited and attached to its complaint the most recent Policy, which provided coverage from April 24, 2007, through April 24, 2008. On March 2, Federal filed a motion for judgment on the pleadings,

arguing that ProLink could not establish that any of GPS's allegations triggered coverage under the Policy. ProLink responded to Federal's motion and filed a cross-motion for summary judgment on March 23. The district court found in favor of Federal on October 14, citing the Policy's exclusion of coverage for "personal injury" arising out of an offense committed before the beginning of the policy period ("First Publication Exclusion"). The district court held that ProLink's claim failed because the first alleged "personal injury" for which GPS sought damages (June 2006) occurred outside of the Policy period (April 2007 to April 2008), and thus, the exclusion applied. Although ProLink asserted in its reply brief that an identical Policy was in effect during the preceding year, the court deemed this argument waived. ProLink filed this timely appeal.

## II. ANALYSIS

We review *de novo* the district court's judgment on the pleadings in favor of Federal and denial of ProLink's summary judgment motion. *See Fail-Safe, LLC v. A.O. Smith Corp.*, 674 F.3d 889, 892 (7th Cir. 2012). We construe all facts and grant all reasonable inferences in favor of the party against whom the motion under consideration was made. *Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011).

Federal and ProLink agree that Illinois law governs the outcome of this diversity action. Thus, "[t]o determine if an insurer has a duty to defend the insured, the court must compare the allegations in the underlying

complaint to the relevant provisions of the insurance policy." *Universal Underwriters Ins. Co. v. LKQ Smart Parts, Inc.*, 963 N.E.2d 930, 937 (Ill. App. Ct. 2011), *leave to appeal denied*, 968 N.E.2d 89 (Ill. 2012); *see also Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010). The insurer's duty to defend arises if "the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage." *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1017 (Ill. 2010). The allegations of the underlying complaint and the policy terms are construed liberally in favor of the insured, resolving all ambiguities against the insurer. *Amerisure*, 622 F.3d at 811. The insurer must defend the insured "even if the allegations are groundless, false, or fraudulent" and "even if only one of several theories is within the potential coverage of the policy." *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005); *see also Owners Ins. Co. v. Seamless Gutter Corp.*, 960 N.E.2d 1260, 1269 (Ill. App. Ct. 2011). In sum, "an insurer may not justifiably refuse to defend a lawsuit against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 315 (Ill. 2006).

The district court chose to enter judgment in favor of Federal based on the First Publication Exclusion, noting that ProLink did not timely inform the court that the same Policy was in effect prior to 2007. But Federal's denial letter, which was part of the record, specifically

references the Policy, "issued for the policy periods of April 24, 2006 to April 24, 2007 and April 24, 2007 to April 24, 2008," and "continuously in force from May 18, 2003." (Compl. Ex. 5 at 2.) Given that the 2006-2007 policy was referenced in the record before the district court, we decline to rely upon the First Publication Exclusion in reaching our decision. Instead, "we may affirm a judgment on any ground the record supports and the appellee has not waived." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 454 (7th Cir. 2011). Although the district court did not address whether the underlying complaint's allegations fall within, or potentially within, the Policy's coverage, we find that they do not and will affirm the judgment on this basis.

In the Policy, Federal agrees to pay damages that ProLink becomes legally obligated to pay for "personal injury." "Personal injury" is defined, in part, as:

> injury, other than bodily injury, property damage or advertising injury, caused by an offense of:
>
> . . . electronic, oral, written or other publication of material that:
>
> 1. libels or slanders a person or organization (which does not include disparagement of goods, products, property or services) . . . .

(Policy at 30.) Federal asserts that GPS's allegations do not satisfy this definition because the only thing alleged is disparagement of property (the '518 patent). Because disparagement of property is specifically excluded from the definition of "personal injury," Federal had no duty

to defend ProLink. In contrast, ProLink argues that it is reasonable to infer from the underlying complaint that ProLink implicitly defamed and disparaged GPS, not just its patent. This implicit defamation constitutes libel or slander of an organization—a covered "personal injury."

The parties agree that GPS's asserted claims for relief, slander of title and unfair competition, do not satisfy the definition of "personal injury." But "[t]he legal labels used by a plaintiff in the underlying case are not dispositive as to whether a duty to defend exists." *Conn. Indem. Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 349 (7th Cir. 2003) (*citing Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 761 N.E.2d 1214, 1221 (Ill. App. Ct. 2001)). ProLink believes certain allegations in the complaint allege reputational harm and state claims for implicit defamation. Specifically, ProLink infers from the allegations of the complaint that its alleged representations imply that GPS does not own rights to the '518 patent and therefore GPS must be misrepresenting its legal rights. "Claims that GPS had no valid patent rights to assert against ProLink slandered GPS by accusing it of being dishonest." (Appellant's Br. at 10.) This implicit defamation, ProLink argues, is covered, or at least potentially covered, under the Policy.

ProLink claims that this case is "nearly identical" to the issues addressed in *Nvidia Corp. v. Federal Insurance Co.*, No. 04 C 7178, 2005 WL 2230190 (N.D. Ill. Sept. 6, 2005) (unpublished). In that case, the underlying complaint alleged that Nvidia agreed to cooperate in a plan to create

a new company which would "cripple" VisionTek, the underlying plaintiff. *Id.* at *1. As part of this plan, Nvidia's director of sales advised others that VisionTek "did not have the legal right to sell [its] inventory," based on allegations that VisionTek's products were sold without appropriate software licenses. *Id.* at *1, 12. According to the underlying complaint, these statements caused irreparable damage to VisionTek's reputation. *Id.* at *1. But the complaint only stated a claim of "product disparagement," not defamation. *See id.* at *2. Under a policy similar to the one at issue in this case, covering "personal injury" including "oral or written publication of material that slanders or libels a person or organization," *id.* at *1, Federal denied coverage and refused to defend or indemnify Nvidia, *id.* at *2. The district court held that the underlying complaint's allegations, that VisionTek did not have the right to sell its inventory and sold such products without the appropriate licenses, "impugn the seller's integrity, honesty, and business ethics, [and] are seen as putative defamation claims under Illinois law." *Id.* at *12. In addition, Nvidia's alleged campaign to publicly disparage VisionTek triggered the duty to defend because "damage to a party's reputation through the utterance of false communications about that party can constitute potential defamation." *Id.* at *13.

ProLink believes this case is analogous to *Nvidia* and the outcome should be the same. Notwithstanding the nonbinding nature of the case, ProLink overlooks key distinctions between the allegations in the VisionTek and GPS complaints. For instance, VisionTek specifically

alleged that Nvidia told others that VisionTek did not have the legal right to sell its products. This statement clearly implicates slander of a person or organization, as required by the Policy. That is, the statement expressly defames VisionTek. In contrast, the GPS complaint merely alleges that ProLink claimed rights in and ownership of the '518 patent. There are no allegations that ProLink ever mentioned GPS in its undertakings. Further, the injuries GPS complains of are slander of title and encumbrance of GPS's title to the '518 patent. Thus, unlike *Nvidia*, every allegation in the GPS complaint speaks to disparagement of property, which is not covered under the Policy, rather than disparagement of GPS as an organization.

Many of the cases ProLink cites in support of its position are distinguishable from the facts of this case for the same reason as *Nvidia*. *See, e.g.*, *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 745 (7th Cir. 2001) (applying Illinois law, allegations that the insured falsely notified the underlying plaintiff's clients about the underlying plaintiff's practices suggested claims of defamation and disparagement of services); *Miranda v. Cal. Capital Ins. Co.*, No. A126778, 2011 WL 1168064, at *6 (Cal. Ct. App. Mar. 29, 2011) (unpublished) (applying California law, allegation that the insured intentionally transferred inferior cows to a purchaser and represented that the cows were from the underlying plaintiff's herd "was potentially defamatory, sufficient to trigger a duty to defend"); *Amerisure Ins. Co. v. Laserage Tech. Corp.*, 2 F. Supp. 2d 296, 304 (W.D.N.Y. 1998) (applying Illinois law, defamation claim existed

where the underlying complaint alleged that the insured informed customers that the underlying plaintiffs infringed upon two patents and "such customers act at their own risk in purchasing products from [the underlying plaintiffs]"). In these cases, the underlying complaints specifically alleged that the insured made an express statement *about* the underlying plaintiff. Accordingly, these allegations could be considered claims of slander of a person or organization. Not so here, where ProLink's representations concerned only its own rights to the '518 patent and never identified GPS or accused GPS of any wrongdoing. *Accord Novell, Inc. v. Vigilant Ins. Co.*, 421 F. App'x 872, 875-76 (10th Cir. 2011) (unpublished) (applying Utah law, it was "too great a stretch" to find an implicit defamation claim in what was "merely an ownership dispute concerning copyrights"). Because the underlying complaint's allegations concern only disparagement of property, which is not covered under the Policy, Federal did not have a duty to defend ProLink in the GPS litigation.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.