ROBERT B. COBURN, RESPONDENT, v. METROPOLITAN LIFE INSURANCE COMPANY, APPELLANT.—91 S. W. (2d) 157.

Springfield Court of Appeals. March 3, 1936.

*Oliver & Oliver* and *Leroy A. Lincoln* for appellant.

*John A. McAnally, W. L. Proffer* and *Bradley & Noble* for respondent.

SMITH, J.—This is an action on an insurance policy, insuring plaintiff against total and permanent disability. Plaintiff contends that he was, at the time of his injury, in the employ of the Chevrolet Motor Company at Flint, Michigan. His home was at Hollywood, in Dunklin County, Missouri. He went to Flint in March, 1927, to work for the motor company, and began work for the company in March, 1927, and at that time, made application for insurance and a certificate of insurance was issued to him. Plaintiff quit work and this first certificate was cancelled, but he went to work again for the motor company in August, 1928, and continued till May 30, 1929, and at the time he went back to work in August, 1928, he again made application for and received a certificate for $1,000 of insurance. Then later, September 1, 1928, he made application for another $1,000 insurance certificate which was issued to him. General Motors Corporation carried with the Metropolitan Life Insurance Company Group Policy No. 3200-G, covering its employees and the employees of its subsidiaries which subsidiaries included the Chevrolet Motor Company. An employee of the Chevrolet Motor Company was insured under the Group policy by issuing to the employee what is called a certificate and the defendant insurance company furnished these certificates and the Chevrolet Motor Company delivered them to the employees taking insurance. Plaintiff was paid twice a month by the Chevrolet Motor Company and the premiums for the insurance, $1.50 per month, were deducted from the first pay check of the month, and the motor company paid the premium to the insurance company.

Group policy No. 3200-G under which plaintiff was insured provided that: "(c) Total and Permanent Disability Benefits.—Upon receipt by the Company of due notice and proof—in writing—that any Employee, while insured hereunder and prior to his sixtieth birthday, has become totally and permanently disabled, as a result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for wage or profit, the Company will discontinue the Life Insurance in force on the life of said Employee and three months after receipt of such proof, will commence to pay, subject to the terms hereof, in lieu of the payment of Life Insurance at his death, monthly instalments as defined below

to the said Employee or to a person designated by him for the purpose; provided that if such disability is due to, or is accompanied by, mental incapacity, the instalments may be paid to the Beneficiary of record of the said Employee, and the Company will continue such payments for the period provided below, should said Employee continue totally and permanently disabled."

The instalment payments provided for were $52.50 per month on a $2,000 certificate.

Plaintiff contends that when he went to work for the Chevrolet Motor Company he was in sound health and was also in sound health when he went back to work in August, 1928. Plaintiff contends that he received an injury while working for the Chevrolet Motor Company on the night of February 8, 1929, which resulted in his total and permanent disability within the meaning of the policy and while the policy was in force. As to the cause and result of the injury, plaintiff testified: "I got hurt on the night of February 8, 1929. I was running a high-speed milling machine where they were smoothing off heads and I had to climb up on a high platform to unloosen a nut and when I turned the nut it came loose right quick and I fell on the floor and there was an old piece of line shaft on the floor and I fell on that. Q. Was that a metal piece? A. Yes, sir. . . . The line shaft was made out of metal or steel and I fell on it. I was six and one-half feet from the floor. It struck me right under the left shoulder. It was something like two o'clock in the morning. I never worked any more that night. Something like thirty days later I went back and tried to work and worked about fifteen minutes. I tried three different times and found that I couldn't work and told them I would have to quit. I couldn't handle a machine I was so sore in my side and it would make me sick and trembly. They put me on a job making bushing, a light job, but the light jobs weren't steady and I couldn't do the hard jobs. I tried working something like a month, but I didn't make any money and finally left in May."

Plaintiff insists that his insurance was in full force and effect when he was injured and that he was totally and permanently disabled within the purview of the policy, and was so disabled while the policy was in force, and that he should recover.

The plaintiff in his petition sought judgment against the defendant in the sum of $2000, the amount alleged to be due under the policy for permanent disability, together with $195, the alleged amount due for temporary disability benefits, plus ten per cent of such amount for vexatious refusal to pay, and for an additional sum of $500 for attorney fees for the prosecution of the suit, and for his costs.

The case was tried to a jury and resulted in a verdict and judgment for plaintiff in the sum of $2000 for permanent disability. The items

sought for temporary disability, and for delay and for attorney fees were not allowed. Motion for new trial was overruled and an appeal was taken to this court.

The case is before us under eleven assignments of error. The first seven of these assignments go largely to the question of·error on the part of the trial court in`not directing a verdict under defendant's demurrer. We deem it not necessary to discuss the first five of these assignments in view of what we shall hereinafter say and do with reference to the sixth and seventh of these assignments. The sixth and seventh assignments raise specifically the failure on the part of plaintiff to give notice to the company of the injury complained of, and the delay so long in bringing suit on the policy after the injury. Under assignment six the defendant expresses its complaint in the following language:

"The plaintiff was guilty of laches. It was four years, seven months and three days after he claims to have become totally and permanently disabled before he made an attempt to make proof of such disability— from February 8, 1929, to September 11, 1933. That is too long to wait to make a claim, so long as to be unreasonable and so unreasonable as to make it the duty of the court to say so."

And under the seventh the defendant expresses its complaint as follows:

"(a) Section 14 of the policy sued on provides that 'immediate written notice of sickness of, or injury to, any employee insured hereunder, must be given to the company by such employee.'

"Here it was four years, seven months and three days before notice was given. That is not immediate notice. No court has ever held it was.

"(b) Section 14 of the policy further provides that:

" '(c) No action at Law or in Equity shall be brought for recovery under the Provisions of this Policy for Temporary Disability or Total and Permanent Disability prior to the expiration of sixty (60) days after proof has been filed, in accordance with the requirement of this Section nor shall such action be brought at all unless brought within two (2) years from the expiration of the time within which such proof is required to be filed.'

"There is no question in this case that this provision was not performed. There was no issue of fact with reference to it. It was therefore the duty of the court to pass upon it upon the admitted facts."

We consider these two points together under one head, and cannot escape the conclusion· that there is merit to defendant's contention.

We have quoted above a part of the plaintiff's statement with reference to his injury, the date of it, and his inability to work thereafter. There was other testimony introduced as to his continued disability to make it a question for the jury as to his total and permanent

disability under the terms of the insurance. If this case depended on the sufficiency of the evidence as to total and permanent disability we would set out at more length the evidence along that line, but it is unnecessary to lengthen this opinion by doing that.

This record clearly shows that the plaintiff was injured on the night of February 8, 1929, and he claims that it was this injury on that particular night which caused his permanent disability. It is true that the record before us shows that this plaintiff visited and was treated by a physician immediately after he was injured, and the record also shows that this physician was a regular physician of the Chevrolet Motor Company, and that the Chevrolet Motor Company is affiliated with the General Motors Company to whom the group policy of insurance was issued. The plaintiff contends that these visits on the part of the plaintiff to the physician were at least some notice of his disability. Even if that could be held to be notice to the insurance company, which we think it could not be, aside from these one or two visits mentioned by the plaintiff, these visits and the treatments were all before May 30, 1929, the day he quit work for the Chevrolet Motor Company. There is not a particle of evidence in this record that any notice of any kind, either as to temporary or permanent disability was given to the defendant until September 11, 1933, four years, three months and eleven days after he quit work for the motor company. No written notice of any kind was given the defendant company until September 11, 1933, and no evidence of any kind was offered as to why notice of the injury was not given. There was no evidence that could be construed as an excuse for not giving the notice or filing the proof of disability as provided in the policy.

Paragraph (a) of Section 14 of the policy provides that "immediate written notice of sickness of, or injury to, any employee insured hereunder, must be given to the company by such employee." Yet the record before us shows that three months and twenty-two days elapsed after the plaintiff fell and was injured before he finally quit work, and there was no compliance with the above provision of the policy as to giving the written notice, nor was any written notice of any kind given until four years, seven months and three days after the injury. And there was no attempt to show that this provision as to written notice was unreasonable, or such a provision that could not reasonably be followed.

Paragraph (c) of Section 14, provides, among other things, that no action at law or in equity shall be brought at all unless brought within two years from the expiration of the time within which such proof is required to be filed.

There was no attempt made, so far as the record before us shows, to comply with either of these provisions of the policy, nor was there

any showing as to why they were not complied with. The record shows it to be a fact that they were not complied with, and that they were plain provisions of the contract.

We find in 14 R. C. L., Section 502, page 1329, this language, "A provision that notice must be given 'immediately,' or 'forthwith,' 'as soon as possible' means that the notice must be given within a reasonable time under the circumstances of the case. What is a reasonable time is a question of law when the facts are undisputed and the inferences certain, but where the facts are disputed or the inferences uncertain it is a question for the jury."

There is no controversy here as to the facts. The contract provides for the notices and for the proof of injury to be filed within the time therein stated. The proof is that these provisions of the policy were not complied with and were not attempted to be complied with, nor was there any evidence to show what they were not.

We are forced to the conclusion that the trial court committed reversible error in not directing a verdict for the defendant at the close of the testimony. We think we are sustained in this conclusion by the following cases: Adams v. Metropolitan Life Ins. Co. (Mo. App.), 74 S. W. (2d) 899; Metropolitan Life Ins. Co. v. Cleo Walton (Tenn.), 83 S. W. (2d) 274; Donnelly v. Metropolitan Life Ins. Co., 173 Atl. 489.

Since writing the foregoing paragraphs of this opinion our attention has been called to a very recent opinion from the Supreme Court of this State, handed down December 18, 1935, and appearing in 89 S. W. (2d) 522, published February 18, 1936, the case being Hagan et al. v. Lantry et al. Our attention is especially called to what the court there says about laches, as follows: "A statute of limitation is not here involved, and mere delay on the part of the plaintiff in asserting an equitable claim does not alone or necessarily constitute laches. It must be a delay that works to the disadvantage and prejudice of defendant." Citing cases.

We have carefully read the opinion in the Hagan case, supra, as well as the authorities cited therein on the question of laches, and we think the facts are so different from the facts in this case, that it is not authority for us to change our conclusions in the instant case. In the Hagan case the interests of minor children were involved, and the court held that they would not be bound by acts of their guardian, for such guardian cannot "create an estoppel against the ward by his own acts or omissions."

There can be no question about it under facts such as set out in the Hagan case, nor can there be any question but that this court is bound by the holding of the Supreme Court in all cases where the facts are similar. We fully recognize that. But there is no guardian

or ward involved in this suit, and the facts in this case, without the slightest controversy, show that the plaintiff failed to comply with his contract in giving notice or in filing suit in the time required under the contract.

The defendant makes complaint of error as to instructions refused and also given; to argument of counsel for plaintiff; and as to remarks of the trial court. In view of what we have already said we deem it unnecessary to comment on these assignments. For the reasons heretofore given this judgment should be and is reversed. *Allen, P. J.*, and *Bailey, J.*, concur.