BARRINGTON CONSOLIDATED HIGH SCHOOL, SCHOOL DISTRICT 224 OF BARRINGTON et al., Plaintiffs-Appellees, v. THE AMERICAN INSURANCE COMPANY et al., Defendants-Appellants—(SUSAN SCHAFER and LEO SCHAFER, Individually and As Father and Next Friend, Defendants-Appellees.)

(No. 71-362; 

Second District—May 2, 1973.

SEIDENFELD, J., dissenting.

Snyder, Clark, Dalziel, Holmquist & Johnson, of Waukegan, for appellant.

Norman & Billick, and Franke & Miller, both of Chicago, for appellees.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

Barrington Consolidated High School, School District 224 of Barrington, Illinois, and Kathleen Van Ness Lawyer, brought a declaratory judgment suit against The American Insurance Company, Newark, N.J., and Fireman's Fund American Insurance Companies, Successor in Interest, to determine whether the company was obligated to defend and indemnify the school in a pending suit by a student and her father for personal injuries and medical expenses.

The trial court found that the high school and Mrs. Lawyer had no reason to believe that they would be charged with negligence; that the incident in question was not such an occurrence as would be contemplated under the provisions of the Notice Provision of the policy, and finally, that the insurance was in full force and effect and that Fireman's Fund American Insurance Companies were obligated to defend the high school and Mrs. Lawyer, and had breached the terms of their policy in failing so to do. The trial court further ordered Fireman's Fund American Insurance Companies to indemnify the high school and Mrs. Lawyer under the terms and provisions of the policy, and to pay costs and expenses. The Fireman's Fund American Insurance Companies appeals.

The sole question before this court is the interpretation of the liability policy which contains a provision that the school shall give written notice to the insurance company "as soon as practicable."

On Friday, January 29, 1965, Susan Schafer was a student at Barrington High School. She was injured in a gymnastic class in the use of a support horse. The next Monday she went to class and told Miss Van Ness (now Mrs. Lawyer) that her leg hurt. That night she went to the family doctor who put her on crutches and gave her a written excuse from gym which she delivered to Miss Van Ness on Tuesday. She also reported to the school nurse that she had been injured. She was on crutches for about two weeks. In February, 1965, she was hospitalized for three weeks. She returned to school and after school closed in the spring she was readmitted to the hospital for intensive care. On August 15, 1965, the parents of Susan Schafer inquired of the school authorities as to home tutoring for Susan. On September 16, 1965, the parents of Susan sent the following letter to the Lake County Superintendent of Schools, with a copy to Mr. Gillis, the school Principal, Dr. Finley, the school Superintendent, Mr. Schwem, the President of the School Board and Ray Page, the State Superintendent of Public Instruction. A pertinent portion of the letter is as follows:

"Our daughter, Susan, 16 years old, would be a junior attending Barrington Community Cons. High School Dist. 224 this year if it were not for an unfortunate accident which happened to her January 24, 1965.* So that you may better understand our reasons for writing to your office we will briefly explain the circumstances leading up to this letter.

Susan was injured while participating in a supervised gym class. Trying to leap over the gymastic 'horse' she fell and ruptured a blood vessel in her leg. She entered Sherman Hospital, Elgin, for a three week stay in February. She was released and was able to finish the school year. A few days after school closing she had a relapse which several doctors attribute directly to the gym accident. Since that time she has been and still is in the Sherman Hospital under intense care. Both arms and both legs are partially paralyzed. She has endured a major operation to control blood clots which resulted from the broken blood vessel, also suffered pneumonia and complications which almost resulted in death.

As you might imagine the injury has been very expensive. To date the insurance carrier for Dist. 224 has given us no satisfaction nor have they indicated any responsibility or liability. In fact, their attitude has been in our opinion outright obnoxious. It appears at present that we will have to pursue this in court. We have already started preliminary proceedings. However, as serious and exasperating as all this has been, it is not our main reason for writing to you.

Our main questions: How much trouble is it for school administrators to supply tutoring for a physically handicapped child? How long should we wait after request has been made for our child to be given help to which she is legally and morally entitled? We made first inquiry of Mr. Gillis, principal of Dist. 224 about August 15. Incidentally, it is much more difficult to get in touch with Mr. Gillis than it is with you.

Waiting several days and hearing nothing from Mr. Gillis, we called him again to no avail. We then saw Susan's counsellor, who gave us a list of tutors names. Then we were sent to Mr. Lundahl, Business Administrator of Dist. 224, who said he would call us when he had information. He hasn't. At present we are still wait-

* No issue is raised as to the fact that the accident occurred January *29th*, 1965.

ing for assistance in picking tutors. We don't know which ones are available. We don't know anything about them. Should the school administrators give us help in choosing these teachers? The school year is approaching its second week and Susan has not yet started work and is becoming apprehensive over the delay.

We would also like to ask where is the moral obligation of this school system. During the whole 12 weeks plus that Susan has been in the hospital not one administrator or teacher has offered help or even inquired about her condition. Susan has been a good student in school and has never been a problem child. We cannot help but wonder what our school system has come to when concern for the individual is so lacking, and the emphasis on buildings and image is so obvious here.

If your office can answer some of these questions for us or give us any help we will greatly appreciate it. We do not want or expect anything beyond what any other handicapped student is entitled to, but we would like the school administrators to acknowledge that we do exist."

Mr. Gillis, the school Principal, upon receipt of the letter discussed it with the school Superintendent, Dr. Finley, who in turn delivered a copy of the letter to Mr. Lundahl, the school's business manager, whose responsibility it was to maintain liability insurance coverage for the school. No investigation was made of the alleged injury.

Susan Schafer had accident insurance with the Guarantee Trust Life Insurance Company in contradistinction to the liability insurance the school had with The American Insurance Company, Newark, N.J., and Fireman's Fund American Insurance Companies, Successor in Interest, their liability carrier. Some confusion apparently arose as to an interpretation of the last paragraph of the above letter as to what insurance company was referred to in the letter. During the month of January the school nurse did in fact make out an accident insurance form for Susan Schafer. Home tutors were arranged for Susan for the school year of 1965, and in 1966 special transportation was arranged to bring her to the school. On February 26, 1969, Susan Schafer filed suit against Barrington High School and Mrs. Lawyer, her gym teacher, for the injury she received on January 29, 1965. This suit is still pending in the circuit court. On March 5, 1969, the summons and complaint in that suit were sent to Fireman's Fund American Insurance Companies. This was the first notification that they had of any claim relating to Susan Schafer's injuries, and

they denied coverage because of the failure of the school to notify them of the Susan Schafer accident until four years after it occurred. The instant declaratory judgment suit then followed.

The school contends that the wording of the policy "as soon as practicable" means "within a reasonable time" and that a reasonable time depends upon the facts of each case. In support of this contention they first allege that the plaintiffs had every reason to believe that no claim would arise from the trivial occurrence. This court fails to see how the school could consider this incident as being trivial. After the accident the girl was placed on crutches by her doctor for a period of approximately two weeks, was then subsequently hospitalized for three weeks, returned to school and was readmitted to the hospital after the close of the school year. The parents in writing advised the school of her injuries by the above letter and the school in turn arranged for a tutor for Susan for the following year and special transportation to the school for the next year. It is difficult to see how the school could consider the injury as trivial.

The next contention of the school is that the plaintiffs reasonably assumed that they could not be liable and were thus excused. The authorities cited by the school do not support this contention in the light of the facts in the instant case. We find that the school did not act reasonably or prudently in failing to notify their insurance carrier in view of the injury herein, the subsequent hospitalization, tutoring, and special transportation arranged by the school, all of which they had full knowledge. Additionally, the letter above identifying the injury was sent to the business manager of the school whose responsibility included the maintenance of liability insurance coverage for the school.

The court in *Fireman's Fund Indemnity Co. v. Kennedy* (1938), 97 F.2d 882, 888, quoted the opinion in *Texas Glass Co. v. Fidelity & Deposit Co.*, Tex.Com.App., 244 S.W. 113, as follows:

> "'On the other hand, it is equally clear that determination of the question whether an occurrence comes within the terms of the policy as being an accident required to be reported should not be left solely to the judgment or discretion of the assured.'"

In *City of Chicago v. United States Fire Insurance Co.* (1970), 124 Ill.App.2d 340, 260 N.E.2d 276, a worker was injured on August 2, 1962. He filed suit on March 14, 1963 and over four years later the city notified their insurance company. As the court stated at page 346:

> "The subject of excuses for delayed notice in insurance liability cases was extensively reviewed at 18 A.L.R.2d 470. We learn there that courts have, on occasion, excused a late notice where the insured was ignorant of the accident or injury; where the insured, acting as a reasonable man, believed that he was not liable; where,

due to the trivial nature of the occurrence, the insured believed no claim would be filed; or where the insured, acting as a reasonably prudent person, believed that the accident was not covered by the policy. The instant case falls within none of these categories."

With this, we agree. The instant case before us does not fall within any of the categories therein enumerated.

■■ Plaintiff has cited *Century Indemnity Co. v. Serafine*, 311 Fed.2d 676 (1963) CCA 7th; and *General Insurance Co. v. Gilliam County High School*, 234 Fed. Sup. 109 (1964), which in substance hold that delay in giving notice is excusable in the case of a trivial occurrence and notice of every mishap or occurrence need not be given under a policy of liability insurance where the injury is subsequently discovered. These cases are not applicable to the instant situation where the school could not possibly plead ignorance or triviality in view of the facts herein.

In *International Harvester Co. v. Continental Casualty Co.* (1962), 33 Ill.App.2d 467, 179 N.E.2d 883 at 835, the court stated:

"A notice provision such as this is not to be considered as a technical requirement included in policies merely for the convenience of the insurance company. Rather is it a matter of substance imposing a valid prerequisite to coverage. [Citation.] Upon the happening of an accident, a prompt, as distinguished from a delayed, investigation of the facts of the occurrence can so greatly affect the efficiency of the defense as to change the very character of the risk insured. [Citation.] It follows, therefore, that the notice requirements of a policy apply not only to the named insured but also to unnamed additional insureds under an omnibus clause. [Citations.]" 33 Ill.App.2d at 472.

In the instant case the school administrator was duly notified of the injury and did nothing. See also *Coburn v. Metropolitan Life Insurance Co.* (1936), 230 Mo.App. 1140, 91 S.W.2d 157, and *Scammon v. Germanic Insurance Co.* 1881, 101 Ill. 621.

■■ We then turn to the position of Kathleen Van Ness Lawyer. She is an adult insured under the policy of the school and we hold the notice requirements of the policy herein, apply to unnamed additional insureds in the liability policy of coverage for the school and its employees. In *Metropolitan Life Insurance Co. v. Henry* (1940), 24 N.E.2d 918 (Indiana) cited by defendant, the Supreme Court of Indiana held that notice by an employee under a group life and liability insurance policy was not within a reasonable time. In the *Henry* case the employee was disabled in 1928 and proof thereof was not given to the employer's insurance company until 1935; the reason being that the employee thought the

group policy was for life insurance only and he had no knowledge that it covered disability until three days before he gave notice to the insurance company. The Indiana Supreme Court further held that the employer was the agent for its employee, and that failure of the employer to give notice was imputed to the employee.

The *Henry* case was cited with approval in *Navigazione Alta Italia v. Columbia Casualty Co.* (1958), 256 F.2d 26. The plaintiff there was ignorant of the coverage afforded them as additional insured under another's policy. While it is true that notice by the additional insured was not given until after judgment had been obtained, the court at page 28 nonetheless held that knowledge of the Walsh Stevedoring Company "* * * who took the policy out for plaintiff's benefit was in law notice to the plaintiff."

This court is cognizant of the variation of the rulings on this subject in other jurisdictions. We find no case directly in point in Illinois. We therefore choose to follow the doctrine enunciated in *Metropolitan Life Insurance Co. v. Henry*, 24 N.E.2d 918, under the facts in this case. Attention is directed to 47 A.L.R.3d 199, where the subject of ignorance of coverage was discussed as a factor excusing delay in reporting an accident. We find that inasmuch as the school failed to give notice, this in turn binds the additional insured, Mrs. Lawyer, who in fact had no knowledge of the policy. As far as the record herein discloses, Mrs. Lawyer referred Susan Schafer to the school nurse but took no further action with regard to the incident. Mrs. Lawyer failed to notify the school authorities of the accident and considered it trivial having made no inquiry as to whether there were any coverage. The principles enunciated herein apply to her as an additional insured.

We therefore find that the notice given by the school board to its insurance carrier did not comply with the provisions of the policy herein providing for notice "as soon as practicable" and that the insurance company is therefore not bound to defend the defendants. Judgment of the trial court is reversed.

Reversed.

ABRAHAMSON, J., concurs.

Mr. JUSTICE SEIDENFELD dissenting:

I would uphold the judgment of the trial court. Notice to the insurer "as soon as practicable" after an accident means notice within a reasonable time, dependent upon all the facts and circumstances—essentially a question of fact unless the facts and the inferences to be drawn from them are not in dispute. (*Simmon v. Iowa Mutual Casualty Co.* (1954),

3 Ill.2d 318, 321-322; *Walsh v. State Farm Mut. Auto. Insurance Co.* (1968), 91 Ill.App.2d 156, 164.) In my view, differing inferences could reasonably be drawn from the facts and circumstances here. The finding of the trial court was not clearly erroneous or against the manifest weight of the evidence and should therefore be upheld. *Simmon v. Iowa Mutual Casualty Co.* (1954), 3 Ill.2d 318, 321-322.

I would agree with the conclusion in the opinion that the injury did not turn out to be a trivial one such as would justify the delay in notice, since the letter of September 16, 1965 clearly informed the school that a serious injury had occurred which arose out of an accident at the school. But there is authority for the proposition that notice is not required until such facts have developed as would suggest to a person of ordinary and reasonable prudence that liability might arise; and the requirement of notice is met by advising the insurer within a reasonable time after the injury presents aspects of a possible claim for damages. (*Star Transfer Co. v. Underwriters at Lloyds* (1944), 323 Ill.App. 90, 93; *Hall Const. Co. v. Employers Mut. L. Insurance Co.* (1963), 43 Ill.App.2d 62, 66-68.) The rule has been generally recognized. See cases collected in Anno. 18 A.L.R.2d 443, 474 (Sec. 22); 39 A.L.R.3d 593, 597 (Sec. 2).

It appears from the record that the school cannot reasonably be charged with awareness that a liability claim might arise prior to the receipt of the Schafer letter in September of 1965. And no event occurred to make the school aware after receipt of the letter until service of the summons and complaint, following which the school notified the insurer. The instant case must therefore be decided upon the facts surrounding the Schafer letter.

The first question is one of fact—whether the reference in the letter to the insurance carrier for Dist. No. 224 pertains to Guaranty Trust, the accident insurer. The court's evident finding that the reference was to the health and accident carrier is not against the manifest weight of the evidence but on the contrary is amply supported by the language of the letter, the circumstances at the time it was written and the testimony of witnesses. Further, from the language of the letter and the surrounding circumstances, the trial court could find that a reasonably prudent person, reading the letter, would not believe under the circumstances that a liability claim might be entailed. While there were several contacts between the Schafers and the school to secure home tutoring for Susan, the Schafers did not indicate that they considered the school at fault for Susan Schafer's injuries. The fact that the Schafers in no way indicated that they considered the school at fault for Susan's injuries until four years later supports an inference, at least by hindsight, that the belief that no claim would be made was a reasonable one.

In addition, the record contains numerous facts from which the court could fairly infer that no liability would be involved. There was testimony that the activity involving the initial injury was not hazardous. The class was supervised and the principal had no reason to believe that Susan was injured in any other manner than in the course of normal gym procedure. It was common that there would be bumps or injuries but during all the years of the principal's long association with the school he could recall no other liability claims against the school, although it was of substantial size. There were numerous accident claims, but this could reasonably lead to the inference that because this claim was initially made against only the accident insurer, with no indication of the school's responsibility (except to provide tutoring), that no liability was involved.

The injury initially received could well have been considered by the school as the normal bump which might be expected in physical education. Susan continued in class after the fall using the same support horse and rings and did not mention anything to her teacher about the accident. While this would not detract from the seriousness of the impairment which was brought to the school's attention later, it would indicate that the nature of the initial injury and the circumstances surrounding it were not so unusual that a reasonably prudent person could believe no liability was entailed.

A further circumstance which the court could consider was the lack of a clear criteria for reporting occurrences and accidents under the notice provision of the policy. According to the insurance company, compliance with the literal language of the provisions by reporting all accidents was considered neither necessary nor sufficient to obtain coverage. The ambiguity as to when a potential claim or accident should be reported could properly be resolved against the insurer in the absence of its providing proper guidelines for reporting claims.

As indicated before, it was peculiarly within the province of the trial judge to resolve the question of notice upon the consideration of the various facts and circumstances outlined, and it cannot be said as a matter of law in this case that notice to the insurer was unreasonably delayed. *Hall Const. Co. v. Employers Mut. L. Insurance Co.* (1963), 43 Ill.App.2d 62; *Haskell v. Siegmund* (1960), 28 Ill.App.2d 1. See also *American Employers Insurance Co. v. Town of Swanzey* (N.H. 1968), 237 A.2d 681; *U.S.F. & G. Co. v. Giroux* (Vt. 1971), 274 A.2d 487; *Frederick v. John Wood Co.* (Minn. 1962), 116 N.W.2d 88; *Henschel v. Hawkeye-Security Ins. Co.* (Ia. 1970), 178 N.W.2d 409; *Cooper v. Government Employees Ins. Co.* (N.J. 1968), 237 A.2d 870.

The trial court's finding in favor of the plaintiff, Kathleen Van Ness

(now Lawyer), the gym teacher, is even more strongly supported in my view. Susan, the injured girl, did not notify Miss Van Ness of the occurrence of landing wrong on her leg. She continued in class using the support horse after the accident. Miss Van Ness was notified that Susan's leg hurt the following gym class, but Susan continued to participate that day. There is no showing in the record that Miss Van Ness was aware of the cause of Susan's being on crutches after that or that she knew that the child was hospitalized in connection with the gym accident. She was not contacted by the Schafers before the suit. She left the school at the end of the school year (June, 1965), and knew nothing of the suit until March, 1969, and was served on July 19, 1969. The trial court could reasonably have found that she was not aware of the accident or that a claim or liability was involved or even that there was an additional or omnibus insurance liability policy in existence which covered her. All of these facts serve as a valid excuse for delayed notice under the cases, since the knowledge of the school itself could not be imputed to her as an additional insured. *Scott v. Inter-Insurance Exchange* (1933), 352 Ill. 572, 579; *Haskell v. Siegmund* (1960), 28 Ill.App.2d 1, 19. See also *Cinq-Mars v. Traveler's Insurance Co.* (R.I. 1966), 218 A.2d 467; *Jarka Corporation v. American Fidelity and Casualty Co.* (S. Crt.—App.Div. 1963), 19 A.D.2d 141, 241 N.Y.S. 2d 546, aff'd 14 N.Y.2d 714, 199 N.E.2d 161; *Navigazione Alta Italia v. Columbia Casualty Co.* (5th Cir. 1958), 256 F.2d 26, 32 (dissent).