# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Mt. Hawley Insurance Co. v. Robinette Demolition, Inc.**, 2013 IL App (1st) 112847

---

| | |
|---|---|
| Appellate Court Caption | MT. HAWLEY INSURANCE COMPANY, Plaintiff-Appellee, v. ROBINETTE DEMOLITION, INC. and VALENTI CONSTRUCTION, LLC, Defendants-Appellants, (Richard Bucholz, Defendant). |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-2847 |
| Filed | July 26, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a dispute over insurance coverage pursuant to an "ongoing sub-contract agreement" under which a subcontractor was required to obtain insurance covering the contractor and other parties as additional insureds and had a duty to notify the insurer of any possible claims, the contractor and an additional insured were entitled to coverage for the injury of an employee of the named insured, despite the breach of the notice requirement by the subcontractor, the named insured, since the additional insureds complied with their duty to give notice and coverage for the additional insureds was not contingent on the named insured's compliance with the notice provision; furthermore, the party added by the contractor to the project that resulted in the injury at issue was an additional insured, even though the party's name did not appear in the ongoing agreement, because the agreement, the work order for the project, and the certificate of insurance satisfied the requirement of a written contract. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-05457; the Hon. Nancy J. Arnold, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

Counsel on Appeal

Michael Resis and Christine V. Anto, both of SmithAmundsen LLC, of Chicago, for appellants.

Michael J. Duffy and Ashley L. Conaghan, both of Tressler LLP, of Chicago, for appellee.

Panel

JUSTICE HALL delivered the judgment of the court, with opinion.

Justice Reyes concurred in the judgment and opinion.

Justice Gordon dissented, with opinion.

## OPINION

¶ 1    The plaintiff, Mt. Hawley Insurance Company (Mt. Hawley), filed a complaint against the defendants, Robinette Demolition Company (Robinette) and Valenti Construction, LLC (Valenti), seeking a declaration that Mt. Hawley did not owe a duty to defend and indemnify the defendants in a personal injury suit filed by Richard Bucholz, an employee of one of Robinette's subcontractors. Ruling on cross-motions for summary judgment, the circuit court granted Mt. Hawley's motion and denied the defendants' motion. The defendants filed a timely notice of appeal.

¶ 2    On appeal the defendants contend that the named insured's violation of its duties under the notice provision of an insurance policy did not bar coverage for the additional insureds. They further contend that the circuit court erred when it determined Valenti was not an additional insured.

¶ 3    On April 8, 2003, Robinette and Cobra Concrete Cutting Service, Inc. (Cobra), entered into an "ongoing sub-contract agreement" (the Agreement) under which Cobra would perform concrete cutting services for Robinette on future projects. The Agreement required Cobra to "defend, indemnify and hold harmless" Robinette and "any and all other Additional Insureds specified in Schedule 'B' hereof *** against all claims, damages, losses, costs, expenses, judgments and liabilities." Schedule B delineated the type and amounts of insurance coverage and required that the insurance policy obtained by Cobra include an endorsement naming Robinette and "any other parties as may be reasonably required by [Robinette]" (emphasis omitted) as additional insureds.

¶ 4    Mt. Hawley issued a commercial general liability (CGL) policy (the policy) to Cobra effective March 20, 2008 to March 20, 2009. The policy required the named insured to notify Mt. Hawley "as soon as practicable" of an occurrence, and to provide written notification to Mt. Hawley of a claim or suit "against any insured." The policy provided coverage for "[a]ll persons or organizations where required by written contract."

¶ 5    On February 10, 2009, Robinette sent Cobra a work order for Robinette's 850 Lake Shore

Drive project. Robinette then received a certificate of insurance, revised on February 11, 2009, adding Robinette and Valenti Builders, Inc., as additional insureds.[1]

¶ 6　　On February 25, 2009, Richard Bucholz, a Cobra employee, was injured while working on the 850 Lake Shore Drive project. Mr. Bucholz filed a personal injury complaint against the defendants on October 7, 2010; a first amended complaint was filed on November 3, 2010. On November 23, 2010, Robinette tendered its defense and indemnification in the Bucholz suit to Mt. Hawley. Subsequently, Robinette tendered Valenti's defense and indemnification to Mt. Hawley.

¶ 7　　On January 12, 2011, Mt. Hawley responded denying liability coverage to the defendants. Mt. Hawley explained that since Robinette was potentially an additional insured, it was subject to all policy terms. Mt. Hawley's first notification of the "occurrence," *i.e.*, Mr. Bucholz's accident, was Robinette's tender, almost two years after the accident. Since Mt. Hawley was not notified of the accident in accordance with the terms of the policy, it denied any coverage obligations. Mt. Hawley further determined that Valenti was not an additional insured under the policy because the Agreement did not require Cobra to add Valenti as an insured.

¶ 8　　On February 14, 2011, Mt. Hawley filed a complaint for declaratory judgment against the defendants. In count I, Mt. Hawley sought a declaration that it owed no duty to defend and indemnify Valenti in the Bucholz suit because Valenti was not an insured under the policy. In count II, Mt. Hawley sought a declaration that it had no duty to defend and indemnify the defendants because Mt. Hawley was not notified of Mr. Bucholz's accident in accordance with the terms of the policy. The defendants filed a counterclaim for declaratory judgment, seeking a declaration that they were additional insureds and entitled to coverage under the policy. The defendants filed a motion for partial judgment on the pleadings.

¶ 9　　The parties filed cross-motions for summary judgment on Mt. Hawley's complaint. The circuit court granted summary judgment to Mt. Hawley. The court denied the defendants' motion for summary judgment and denied their motion for partial judgment on the pleadings. This appeal followed.[2]


¶ 10　　　　　　　　　　　　　　　　ANALYSIS

¶ 11　　　　　　　　　　　　　　　I. Standard of Review

¶ 12　　Review of a grant of summary judgment is *de novo*. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 309 (2010). *De novo* review is also applicable to the construction of the provisions of an insurance policy. *Owners Insurance Co. v. Seamless Gutter Corp.*, 2011 IL App (1st) 082924-B, ¶ 29.

---

[1]Despite the discrepancy in the name, Mt. Hawley does not dispute that the certificate of insurance referred to Valenti Construction, LLC.

[2]By stipulation, Mr. Bucholz was dismissed from the suit.

¶ 13                                II. Applicable Principles

¶ 14    The principles governing the review of the grant of summary judgment are well settled. "Summary judgment is proper if, and only if, the pleadings, depositions, admissions, affidavits and other relevant matters on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Illinois Farmers Insurance Co. v. Hall*, 363 Ill. App. 3d 989, 993 (2006). A dispute as to the material facts or where the material facts are undisputed but reasonable persons might draw different inferences from the undisputed facts presents a triable issue of fact. *Wolfram Partnership, Ltd. v. LaSalle National Bank*, 328 Ill. App. 3d 207, 215 (2001). "By filing cross-motions for summary judgment, the parties invite the court to determine the issues as a matter of law and enter judgment in favor of one of the parties." *Hall*, 363 Ill. App. 3d at 993. The grant of summary judgment should be upheld only where the right of the moving party is free from doubt. *Hall*, 363 Ill. App. 3d at 993.

¶ 15    The same rules apply to the construction of an insurance policy that are applied to the construction of other types of contracts. *Hall*, 363 Ill. App. 3d at 993. The primary objective is to ascertain and give effect to the parties' intentions as expressed in the policy's language. *Hall*, 363 Ill. App. 3d at 993. The policy must be construed as a whole giving effect to every provision; unambiguous words in the policy are to be given their plain, ordinary and popular meaning. *West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 184 (2010).


¶ 16                                    III. Discussion

¶ 17    It is undisputed that Cobra, the named insured, breached the policy notice provision. In granting summary judgment to Mt. Hawley, the circuit court found that, as a result of Cobra's breach, Mt. Hawley did not owe a duty to defend and indemnify the defendants in the Bucholz suit.


¶ 18                        A. Breach of the Notice Provision

¶ 19    The policy provided in pertinent part as follows:

"COMMERCIAL GENERAL LIABILITY COVERAGE FORM

* * *

Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words 'we,' 'us' and 'our' refer to the company providing this insurance.

* * *

SECTION IV–COMMERCIAL GENERAL LIABILITY CONDITIONS
    1. ***
    2. Duties In The Event Of Occurrence, Offense, Claim or Suit
        a. You must see to it that we are notified as soon as practicable of an 'occurrence'

or an offense which may result in a claim. \*\*\*

 b. If a claim is made or 'suit' is brought against any insured, you must:

  (1) Immediately record the specifics of the claim or 'suit' and the date received; and

  (2) Notify us as soon as practicable.

  You must see to it that we receive written notice of the claim or 'suit' as soon as practicable.

 c. You and any other involved insured must:

  (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.' " (Emphasis omitted.)

¶ 20 "Insurance policy notice provisions impose valid prerequisites to insurance coverage." *West American Insurance Co.*, 238 Ill. 2d at 185. "The primary purpose of such a notice requirement is to enable the insurer to make a timely and thorough investigation of a claim and to protect itself against unjustifiable claims." *State Farm Mutual Auto Insurance Co. v. Gray*, 211 Ill. App. 3d 617, 620 (1991). The notice requirements of a policy apply not only to the named insured but also to unnamed additional insureds under an omnibus clause. *International Harvester Co. v. Continental Casualty Co.*, 33 Ill. App. 2d 467, 472 (1962).[3]

¶ 21 The issue presented in this case is a narrow one. The parties agree that Cobra, the named insured, failed to comply with its duty under sections 2(a) and (b) of the policy notice provision. Mt. Hawley does not dispute that the defendants complied with section 2(c) of the notice provision to immediately forward the documents received in connection with a suit or claim. The issue to be resolved is whether the named insured's breach of its duty to notify under the policy bars coverage for additional insureds who have complied with their duty under the policy notice provision.

¶ 22 Neither side directs this court to a case addressing this precise issue. Mt. Hawley maintains that *Barrington Consolidated High School v. American Insurance Co.*, 11 Ill. App. 3d 180 (1973), *rev'd on other grounds*, 58 Ill. 2d 278 (1974), supports its argument.[4] The defendants rely on *American National Fire Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh, P.A.*, 343 Ill. App. 3d 93, 104 (2003).

¶ 23 In *Barrington Consolidated High School*, the reviewing court determined there was no insurance coverage where the school failed to comply with the insurance policy notice provision requiring the school to notify the insurer of an occurrence "as soon as practicable." The school was aware that a student had been injured in a gym class in 1965 but did not

---

[3]An "omnibus clause" is "a provision in an automobile-insurance policy that extends coverage to all drivers operating the insured vehicle with the owner's permission." Black's Law Dictionary 1121 (8th ed. 2004).

[4]The supreme court determined that under the facts and circumstances in the case, the school complied with the notice requirement. See *Barrington Consolidated High School*, 58 Ill. 2d at 282-83.

notify the insurer until 1969, when the student filed suit against the school and her gym teacher.

¶ 24 Turning to the issue of coverage for the gym teacher, the court noted that she was insured under the school's policy and held that the "notice requirements of the policy herein[ ] apply to unnamed additional insureds in the liability policy of coverage for the school and its employees." *Barrington Consolidated High School*, 11 Ill. App. 3d at 185. The court found that "inasmuch as the school failed to give notice, this in turn binds the additional insured, Mrs. Lawyer, who in fact had no knowledge of the policy." *Barrington Consolidated High School*, 11 Ill. App. 3d at 186.

¶ 25 In *American National Fire Insurance Co.*, Camosy, the general contractor, was an additional insured under its subcontractor Zalk-Joseph's insurance policy with National Union, and under Area Erectors', one of Zalk-Joseph's subcontractors, policy with American National. On September 9, 1993, Mr. Gonzalez, an Area Erectors employee, was injured. On January 13, 1995, he sued Camosy for negligence. When Camosy requested that Zalk-Joseph tender its defense to National Union, Zalk-Joseph declined to do so. Both Camosy and Zalk-Joseph tendered their defenses to American National. On March 25, 1998, Camosy filed a declaratory judgment suit against National Union and Zalk-Joseph seeking a declaration that National Union owed a duty to defend and indemnify Camosy in the Gonzalez suit.

¶ 26 On May 5, 1998, American National settled the Gonzalez suit. It then sued National Union seeking reimbursement for the costs it incurred in the Gonzalez suit alleging that National Union owed a duty to defend and indemnify Camosy. The circuit court denied American National's motion for summary judgment and granted National Union's cross-motion for summary judgment, finding that National Union did not receive timely notice of the Gonzalez suit. *American National Fire Insurance Co.*, 343 Ill. App. 3d at 96.

¶ 27 On review, the court examined the notice provisions in the National Union policy, substantially the same notice provisions at issue in the present case. The court rejected National Union's argument that Camosy violated sections 2(a) (to notify the insurer of the accident) and (b) (to notify the insurer of a claim or suit), since only the named insured was required to comply with those provisions. As Camosy was an additional insured, it had no obligation to comply with those requirements and therefore could not have violated them.

¶ 28 The court found that National Union was entitled to summary judgment because Camosy failed to comply with section 2(c), requiring it to forward immediately copies of legal papers and documents received in connection with the suit or claim to the insurer. National Union's first notice of the Gonzalez suit came when it was served with a copy of Camosy's complaint for declaratory judgment three years after the Gonzalez suit was filed. The court further noted that Camosy was furnished with a copy of the certificate of insurance from National Union and could easily have notified National Union of its request for a defense together with the specifics of the Gonzalez claim. Because Camosy violated the notice provisions in section 2(c), National Union was not required to defend or indemnify Camosy. *American National Fire Insurance Co.*, 343 Ill. App. 3d at 104.

¶ 29 Mt. Hawley acknowledges that the policy in *Barrington Consolidated High School* contained a different notice provision. Mt. Hawley maintains that reliance on *American*

*National Fire Insurance Co.* is misplaced because the court did not address the effect of the named insured's violation of its duty to notify on the coverage for the additional insureds.

¶ 30    Nonetheless, we find the analysis in *American National Fire Insurance Co.* instructive. The court focused on the notice required of the additional insured without first addressing whether the named insured had complied with its duty to notify. The denial of coverage to Camosy, the additional insured, was based on the breach of its own duty under the notice provision of the policy.

¶ 31    In the present case, the defendants, like Camosy, are additional insureds. Only Cobra, as the named insured, was required to comply with sections 2(a) and (b) by providing notice of Mr. Bucholz's accident and the suit to Mt. Hawley. See *State Farm Fire & Casualty Insurance Co. v. Miceli*, 164 Ill. App. 3d 874 (1987) (since only the named insured was required to appear for a deposition, the denial of coverage to the additional insureds for failing to appear for a deposition was error). The defendants complied with section 2(c) in that they immediately tendered their defense and indemnification request to Mt. Hawley. In contrast to the three years between the filing of the Gonzalez suit and the notice of suit to National Union by Camosy, Mt. Hawley was notified of the Bucholz suit by Robinette's tender less than two months after it was filed.

¶ 32    Mt. Hawley argues that this court must consider the policy notice provisions in light of the policy's separation of insureds provision. The separation of insureds provision provides in pertinent part as follows:

> "Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
>
> > a. As if each Named Insured were the only Named Insured; and
>
> > b. Separately to each insured against whom claim is made or 'suit' is brought."

By such language, the insurer recognizes an obligation to additional insureds distinct from its obligation to the named insured. See *United States Fidelity & Guaranty Co. v. Globe Indemnity Co.*, 60 Ill. 2d 295, 299 (1975).

¶ 33    Mt. Hawley argues that for purposes of the policy notice requirements, Cobra, as the first named insured, and the defendants are under one policy. It follows then that Cobra's breach of the notice requirement bars coverage for the defendants as well as Cobra. Mt. Hawley relies on *First Financial Insurance Co. v. Albertson's, Inc.*, 91 P.3d 470 (Colo. App. 2004). In that case, the defendant argued that the separation of insureds provision required that it receive notice of an endorsement removing it as an additional insured. In construing the same separation of insureds provision at issue in the present case, the reviewing court found that the separation of insureds provision did not apply where the right or duty was specifically assigned to the first named insured. Since only the first named insured was entitled to a notice of cancellation of the policy, the defendants were not entitled to a notice of cancellation. *Albertson's, Inc.*, 91 P.3d at 473.

¶ 34    While Cobra and the defendants are under the same policy for purposes of Cobra's duty to notify Mt. Hawley of Mr. Bucholz's accident, only Cobra, as the named insured, had the duty to provide notice of the occurrence. Nothing in the exception to the separation of insureds provision changed the terms of the policy to make coverage for the defendants, as

additional insureds, contingent on Cobra's compliance with its duty under the notice provision.

¶ 35     Mt. Hawley maintains that since Cobra failed to comply with the notification provision of the policy, Mt Hawley cannot be sued for coverage. It relies on the legal action provision of the policy, which provides in pertinent part as follows:

"No person or organization has the right under this Coverage Part:

a. To join us as a party or otherwise bring us into a 'suit' asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with."

¶ 36     Mt. Hawley relies on *Steadele v. Colony Insurance Co.*, 2011 MT 208, 361 Mont. 459, 260 P.3d 145. In that case, the plaintiffs brought suit against the insurer seeking to collect a default judgment they were awarded against the insured-contractor. They argued the failure of the insured to comply with notice requirements did not prevent them as injured third parties from being compensated by the insurer for their damages. The reviewing court applied the policy's legal action provision to hold that the plaintiffs could not sue the insurer to collect damages where the insured had not complied with the notice requirement. *Steadele*, 2011 MT 208, ¶ 28, 361 Mont. 459, 260 P.3d 145.

¶ 37     Unlike the matter in *Steadele*, the present case was not a suit for damages, and it was Mt. Hawley that instigated the present suit against the defendants to determine if coverage existed. Therefore, the legal action provision does not apply in this case.

¶ 38     In sum, Mt. Hawley's arguments are not persuasive. Moreover, a court ascertains the parties' intent from the policy language. There is nothing in the notice provision of the policy making coverage for the additional insured contingent on the named insured's compliance with its duty to notify. The court cannot import language into a policy that was not placed there by the parties but must determine what the policy is, not what a party argues it should be. *James McHugh Construction Co. v. Zurich American Insurance Co.*, 401 Ill. App. 3d 127, 133 (2010).

¶ 39     The language of the notice provision does not evidence the parties' intent to make the coverage for the additional insureds contingent on the named insured's compliance with its duty to notify under the policy. Since the defendants complied with their duty under the notice provision of the policy, they are entitled to coverage as additional insureds.

¶ 40                              B. Duty to Defend and Indemnify Valenti

¶ 41     The defendants contend that Valenti is an additional insured under the policy. The circuit court determined that since Valenti was not referred to in the Agreement between Cobra and Robinette, Valenti was not an additional insured under the policy.

¶ 42     An endorsement to the policy provided as follows:

"WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of 'your work' for that insured by or for you.

SCHEDULE

Name of Person or Organization

All persons or organizations where required by written contract." (Emphasis omitted.)

¶ 43    The Agreement between Robinette and Cobra provided in pertinent part as follows:

"Subcontractor will recognize this contract for all projects authorized by a Purchase Order and work to be performed on or about the premises listed in the Purchase Order authorizing such work." (Emphasis omitted.)

Under Article 9 of the Agreement, Cobra was required to "defend, indemnify and hold harmless [Robinette], Owner, any and all Additional Insureds specified in Schedule 'B' hereof." Under Schedule B, Cobra was required to provide a CGL policy that included the following:

"This policy shall include an endorsement naming [Robinette] (Contractor), [space left blank] (Owner) & each of their respective affiliates, subsidiaries, officers, directors, employees & agents (and any other parties as may be reasonably required by [Robinette]), as Additional Insureds." (Emphasis omitted.)

¶ 44    The defendants contend that, construed together, the Agreement, the work order, which incorporated the Agreement, and the certificate of insurance listing Valenti as an additional insured fulfilled the written contract requirement. In *Labor World, Inc. v. Just Parts, Inc.*, 315 Ill. App. 3d 903 (2000), the court stated:

" ' "The general rule is that in the absence of evidence of a contrary intention, where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed with reference to one another because they are, in the eyes of the law, one contract. *** This is true whether or not the instruments were executed simultaneously; if executed at different times as parts of the same transaction they will be construed together. [Citation.]" ' " *Labor World, Inc.*, 315 Ill. App. 3d at 906-07 (quoting *Bornstein v. First United*, 232 Ill. App. 3d 623, 628-29 (1992), quoting *Tepfer v. Deerfield Savings & Loan Ass'n*, 118 Ill. App. 3d 77, 80 (1983)).

¶ 45    As a general rule, extrinsic evidence outside of the contract is only admissible if the contract is ambiguous. *Westfield Insurance Co. v. FCL Builders, Inc.*, 407 Ill. App. 3d 730, 736 (2011). Moreover, where as here, the contract contains a clause stating that it is the complete expression of the whole agreement, parol evidence cannot be permitted to add another term. *Pecora v. Szabo*, 94 Ill. App. 3d 57, 63 (1981). However, in order to prove that documents are part of the same transaction or constitute one contract, " 'parol and extrinsic evidence are admissible because such evidence tends to merely identify what the contract is rather than to vary or change the terms of a contract. [Citations.]' " *USX Corp. v. Liberty Mutual Insurance Co.*, 269 Ill. App. 3d 233, 237 (1994) (quoting *Sudeikis v. Chicago Transit Authority*, 81 Ill. App. 3d 838, 841 (1980)).

¶ 46    The Agreement between Cobra and Robinette contemplated Cobra's services on future

projects. Schedule B of the Agreement required Cobra to provide insurance coverage for Robinette and any individuals or companies that Robinette required covered as additional insureds. The February 10, 2009, work order Robinette sent to Cobra contained the following provision:

> "The subcontract is comprised of this Work Order, Insurance Coverage Agreement Schedule 'B' (Insurance Requirements Bulletin), attached hereto and the Terms and Conditions of the Robinette Demolition, Inc. Subcontract Agreement, which has been executed by both parties."

The certificate of insurance was revised as of February 11, 2009. It listed Cobra as the insured and required that Robinette and Valenti be added as additional insureds.

¶ 47　　In his affidavit, Pat Barone, Robinette's accounting and estimating assistant, explained he was in charge of communicating and facilitating compliance with insurance requirements for jobs and projects subcontracted by Robinette to other entities. According to Mr. Barone, for each project, Robinette would send Cobra a list of the entities to be named as additional insureds. In connection with the 850 Lake Shore Drive project, he faxed Cobra a sample certificate of insurance with the additional insured requirements and requested that Cobra add Robinette, Valenti and other listed entities to its liability policy as additional insureds. He received a certificate of liability insurance identifying the project, the Mt. Hawley policy number and an addendum naming Robinette and Valenti as additional insureds.

¶ 48　　Due to the ongoing nature of the Agreement, the unambiguous language of Schedule B reflects the parties' intention that, in addition to Robinette, Cobra was required to obtain additional insured coverage for other entities to be designated at a future time by Robinette. The work order referred back to the parties' Agreement, which set forth that requirement. The certificate of insurance provided that both Robinette and Valenti were additional insureds "with respect to general liability as required by written contract and subject to the policy terms and conditions." While these three written documents were not executed at the same time, they were part of the same ongoing transaction between Robinette and Cobra. See *USX Corp.*, 269 Ill. App. 3d at 237 (letter issued more than three years after the contract between the parties was admissible to establish the intent of the parties to include a counterproposal as part of their contract).

¶ 49　　Mt. Hawley maintains that the certificate of insurance did not constitute a written contract as required by the policy. See *Clarendon America Insurance Co. v. Aargus Security Systems, Inc.*, 374 Ill. App. 3d 591, 597 (2007). It points out that the certificate of insurance was produced by Cobra's insurance agent and that Mt. Hawley never agreed or represented that Valenti was an additional insured. Moreover, the certificate of insurance contained a disclaimer, providing that the certificate did not constitute a contract between Mt Hawley, the insurer, and Robinette, the certificate holder, and did not amend, extend or alter the coverage afforded by the policy. See *American Country Insurance Co. v. Kraemer Brothers, Inc.*, 298 Ill. App. 3d 805, 811 (1998) (where there is a disclaimer in the certificate of insurance, the policy controls the scope of the coverage).

¶ 50　　The fact that the certificate of insurance was issued by Cobra's agent rather than Mt. Hawley's agent is not dispositive. We agree that, by itself, the certificate of insurance does

not fulfill the policy's written contract requirement. The certificate does provide an additional writing which supports a finding that the written agreement between Cobra and Robinette contemplated that, at a future time, Robinette would name other entities to be added as additional insureds.

¶ 51    The cases relied on by Mt. Hawley are distinguishable. In *Clarendon America Insurance Co.*, the written agreement contained the following language, " '[a]ll insurance that may from time to time be required shall be obtained in such manner as the parties hereto agree.' " *Clarendon America Insurance Co.*, 374 Ill. App. 3d at 596. The reviewing court rejected the defendant's argument that the language required the named insured to provide coverage for the defendant as an additional insured. The court found the language left the insurance obligations of both parties to the agreement undecided and did not indicate what insurance was required of either party. The court concluded that the defendant was not an additional insured under the policy. *Clarendon America Insurance Co.*, 374 Ill. App. 3d at 596. Unlike the provision in that case, the Agreement did not leave Cobra's obligation to provide insurance for the additional insureds undecided or subject to further agreement between the parties. *Clarendon America Insurance Co.* is clearly distinguishable.

¶ 52    In *United States Fire Insurance Co. v. Hartford Insurance Co.*, 312 Ill. App. 3d 153 (2000), the reviewing court rejected the argument that the policy provision " 'because of a written contract or agreement or permit[ ]to provide insurance' " (emphasis omitted) could be construed to allow an agreement to provide insurance for an additional insured to be either oral or written. *United States Fire Insurance Co.*, 312 Ill. App. 3d at 156. In this case, the Agreement, the work order and the certificate were all in writing.

¶ 53    *Westfield Insurance Co.* is also distinguishable. That case involved a policy provision which defined an additional insured as " 'any person or organization for whom you are performing operations when you and such a person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured.' " *Westfield Insurance Co.*, 407 Ill. App. 3d at 732. Applying the applicable rules of construction, the reviewing court determined that an entity seeking to qualify as an additional insured must have a direct written contract with the insured for that coverage. *Westfield Insurance Co.*, 407 Ill. App. 3d at 734. The policy provision in the present case is broader and requires only that there be a written contract requiring the insurance coverage.

¶ 54    Construed together, the Agreement, the work order and the certificate of insurance satisfied the policy requirement that there be a written contract requiring Cobra to name Valenti as an additional insured. Contrary to Mt. Hawley's position and the circuit court's determination, the policy's written contract provision did not require that Valenti's name appear in the Agreement. We conclude that Mt. Hawley was required to provide insurance coverage for Valenti as an additional insured.

¶ 55                                    CONCLUSION

¶ 56    For all of the foregoing reasons, the defendants are entitled to coverage as additional insureds under the policy of insurance issued by Mt. Hawley to Cobra. The order granting summary judgment to Mt. Hawley and denying the defendants' cross-motion for summary

judgment is reversed. We remand the cause to the circuit court for entry of an order granting the defendants' cross-motion for summary judgment.

¶ 57    Reversed and remanded with directions.

¶ 58    JUSTICE GORDON, dissenting.

¶ 59    I must respectfully dissent. I agree with the trial court that Valenti is not an additional insured on the insurance policy that is the subject of this litigation. Mt. Hawley's policy required that there be a written contract in order for its insured to name someone as an additional insured. Therefore, as a condition precedent to having an additional insured on the policy there had to be a written contract. The purchase order defines the parties' written contract for this job. However, there is nothing in that document that identifies Valenti; therefore, there is no evidence that compiles with the policy provisions that shows Valenti as an additional insured. Other written documents in evidence that defendants presented included (1) the work order executed by Robinette; (2) the subcontract agreement between Robinette and Cobra; and (3) Valenti's request to be added to the policy and the certificate of insurance issued. None of these documents can qualify as a written contract under the policy. In order to have a written contract in the case at bar, there would have to be a provision that required Cobra to add Valenti as an insured, and no such provision as ever been produced.

¶ 60    The majority finds that it makes no difference whether Valenti is mentioned or not because the agreement between Cobra and Robinette contemplated Cobra's services on future projects and Schedule B of that agreement requires Cobra to provide insurance coverage for Robinette and any individuals or companies that Robinette required covered as additional insured. However, the key to the coverage question in Mt. Hawley's policy is that there had to be a written contract in order for its insured to name someone as an additional insured. The plain and ordinary meaning of that provision of the insurance policy means the additional insured must be named in the contract and there is no written contract introduced in this case naming Valenti as an additional insured.

¶ 61    In its brief to this court, Mt. Hawley concedes that its insurance policy did not require Robinette and Valenti to notify it of the accident and that the policy imposed this duty only on the named insured, Cobra. This duty was described in the policy as follows: "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result into a claim." Although the policy did not impose upon Robinette the duty to "see to it" that the insurance company was "notified as soon as practicable," nothing in the policy barred them from making this notification. They could have notified Mt. Hawley and thus guaranteed that Mt. Hawley received the notice required for their claim. Instead of providing notice directly to Mt. Hawley, they chose to assume the risk that Cobra would provide it on their behalf. Based on Robinette's own chosen course of conduct, I cannot find that the notice requirements should be excused on their behalf.

¶ 62    Robinette has not argued that Mt. Hawley suffered no prejudice as a result of the two-year delay, and we will not scour the record looking for reasons to reverse that the parties

-12-

have not briefed us for. *People v. Givens*, 237 Ill. 2d 311, 323 (2010) ("a reviewing court should not normally search the record for unargued and unbriefed reasons to *reverse* a trial court" (emphasis in original)).